**Governing Regulation I — Declaration of Principles**

The University of Kentucky is a promise — a promise to the people of the Commonwealth to advance the state through education, service, research and care. The *Governing Regulations,* along with its implementing *Administrative Regulations,* articulate principles for how policy is created, how authority and responsibilities for executing those policies are distributed and, ultimately, how they are operationalized to ensure the successful management of the institution.

To those ends, the Board of Trustees declares these principles to guide all aspects of the governance of the University.

**A.    The Board of Trustees Holds the Final Authority for the University**

**1.    The Board of Trustees Is the Representative Body of the People**

The General Assembly, as the People's agents, created the University as an independent body politic of the Executive Branch. Complying with the federal mandate to establish a land grant institution,[1] the General Assembly defined the powers, mission and scope of the University.[2] Through the democratic process, the Legislature or the People themselves may alter the University or its mission.

To ensure accountability to the People, the General Assembly established the Board of Trustees to serve as the People's Representatives.[3] Sixteen Trustees are appointed by the Governor — an elected constitutional officer — and confirmed by the state Senate, elected representatives of the People.[4]  Four of the 20 Trustees are chosen through democratic elections involving various parts of the University community.[5] To continue accountability after the appointment or election, in certain circumstances, the Governor may remove any Trustee or all appointed Trustees.[6]

**2.    The Board Has Final Policymaking Authority and Final Administrative Authority**

Subject to the limitations by the Constitutions and the law, the Board — as the People's Representatives — has final authority over all matters including financial, educational and other policies of the University. This reflects the original understanding of the Board's role. Indeed, the original *Governing Regulation I,* adopted in 1917, declared the Board "is the final authority in all matters affecting the institution and exercises jurisdiction over its financial, educational and other policies, and its relation with the state and federal governments." [7]

The Board's final authority encompasses both policymaking authority and administrative authority. The Board decides the policies for the University, and it delegates responsibility for the implementation of those policies to the President.[8]

In adopting this *Governing Regulation*, the Board explicitly withdraws all earlier delegations of its policymaking authority.

Consistent with the principles of the institution's accrediting body, the Board, after hearing recommendations from the President, will decide the policies of the University. In formulating recommendations, the President shall consult with students, faculty and staff as the President deems appropriate.

### 3.    The Board Delegates Administrative Authority to the President

As the University is complex, it is necessary for the Board to delegate administrative authority over day-to-day operations to the President.[9] In exercising administrative authority, the President is accountable to the Board. The Board may remove the President at any time in accordance with the President's contract.

It is necessary for the President to further delegate some administrative authority to the President's subordinates. These individuals will have significant authority but will always be subject to the ongoing supervision of the President.

This delegation of administrative authority to the President is consistent with the University's accrediting body. Indeed, "[t]he chief executive officer has ultimate responsibility for, and exercises appropriate control over, the institution's educational, administrative, and fiscal programs and services."[10] Furthermore, "[the chief executive officer] oversees an organizational structure that includes key academic and administrative officers and decision makers with credentials appropriate to their respective responsibilities."[11] "Generally this oversight is done through a structural arrangement whereby key officers of the institution report directly to the [chief executive officer], or to a chief operating officer who in turn reports to the chief executive officer."[12]

### B.    Shared Governance

Shared governance is a bedrock principle and a value of the University. It is critical to how the University meets its mission. The Board shall set the policy direction for the institution. The President shall implement policy. In doing so, the President shall seek the counsel of students, faculty and staff, particularly within their respective domains of expertise.

More specifically, subordinate to the Board, governance of the institution is best understood as the President of the University managing the operations of the institution and setting forth a long-term direction for the University, based on the policies established by the Board. To ensure success, the President, directly or through delegated subordinates, will regularly consult with the students as represented in the Student Government Association, the faculty as represented in the Faculty Senate and the staff as represented in the Staff Senate.

Such shared governance is a system of mutual responsibility in which students, faculty and staff take part in the decision-and-policymaking process through advice and counsel to the President. A structure and ethos of shared governance exist to provide avenues for voices to be heard and represented in ways that establish a sense of mutual respect and collaboration aimed at University improvement and productivity, centered on the mission of advancing the Commonwealth and the students of the University.

A part of shared governance is the primary role of the faculty — particularly at the department, schools and college levels — in the review, development and implementation of the institution's credit-bearing and non-credit bearing curriculum in academic colleges. As such, the University's educational programs must reflect appropriate input and participation of constituencies. Faculty members should have a substantive role in the development and review of academic policies.

## C.    Academic Freedom

The University "is deeply committed to safeguarding academic freedom, which is of transcendent value" for the entire institution."[13] *All* members of the University community "must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise, our civilization will stagnate and die."[14] An intellectually vibrant academic community is one that fosters civil dialogue and respectful debate, irrespective of ideology, identity, perspective or point of view.

While all members of the University community have academic freedom, it is particularly important to faculty members. Regardless of tenure status or tenure eligibility, faculty academic freedom covers all speech in a formal instructional setting related to the subject of the course and all scholarly speech related to the faculty member's area or expertise.[15]

Yet, as sacrosanct as the value of academic freedom is, it is important to also delineate what it is not. During formal instruction, faculty members should be free — and must be free — to express their views and perspectives on issues relating to their academic expertise. Formal instruction does not allow for faculty members to impose their personal viewpoints on students or engage in promotion of ideas outside their domains of expertise. Formal instruction is for learning and discussion, not indoctrination. Nevertheless, students must be prepared to accept that the subject matter of a course may challenge their beliefs and even cause them discomfort.

## D.    All Members of the University Community Have Equal Dignity

The University follows both the federal and state Constitutions as well as all applicable federal and state laws on nondiscrimination. The University provides equal opportunities for qualified persons in all aspects of institutional operations,

and does not discriminate on the basis of race, color, national origin, ethnic origin, religion, creed, age, physical or mental disability, veteran status, uniformed service, political belief, sex, sexual orientation, gender identity, gender expression, pregnancy, marital status, genetic information, social or economic status or whether the person is a smoker or nonsmoker, as long as the person complies with University regulation concerning smoking.

### E.    The University Must Operate with Ethical Principles

Exemplary ethical conduct is critically important.  To that end, the President, in consultation with the appropriate shared governance bodies, will develop applicable codes of conduct and promulgate as *Administrative Regulations*.

The decisions and behaviors of members of the University community shall be guided by the core values of integrity, excellence, mutual respect and human dignity, academic freedom, personal and institutional responsibility and accountability, shared governance, a sense of community, work-life sensitivity, civic engagement, social responsibility and bringing together many people, one community.

### F.    Supremacy of the Governing Regulations

Subject to the limitations imposed by the federal and state Constitutions as well as federal and state law, the *Governing Regulations* are the supreme policy of the University.

### Conclusion and Adoption of these Principles

The University of Kentucky is a promise, an enduring oath established at the institution's founding in 1865 to advance the Commonwealth that is its namesake.

That promise has never changed but it has necessarily evolved.

The institution has grown, and the needs of the Commonwealth and the world have increased in both scale and complexity.

A multi-faceted mission for the University of Kentucky is now embodied in a commitment to service and engagement that occupies a presence in every county of the state, that extends access to specialty care to more people, that conducts research and ignites discovery into the challenges that most confront communities and in which students are educated in ways that prepare them to thrive in an interdependent, complex world.

The *Governing Regulations* enumerated above and in the pages that follow establish guiding principles — and the basis for clear rules and regulations — for a University

community that continually seeks to inform and enliven that promise, today and into the future.

The Board adopts these principles on this ___ day of ____ in the year two thousand twenty-four and of the University the one hundred and sixtieth.

---

[1] 7 U.S.C. §§ 301 *et seq.*

[2] KRS §§ 164.100 *et seq.*

[3] *See* KRS § 164.131(1)(a).

[4] KRS § 164.131(1)(e).

[5] KRS § 164.131(1)(e).

[6] KRS § 164.131(1)(d). The statute allows removal of an individual Trustee for cause under KRS § 63.080(2); one or more Trustees for non-compliance with statutory requirements concerning membership under KRS § 63.080(3); and the entire appointed board membership for cause under KRS § 63.080(4).

[7] *1917 Governing Regulation I* (reprinted in the Board of Trustees Minutes for December 10, 1917).

[8] *SACSCOC Principle 4.2.b.*

[9] *See* KRS § 164.220(1).

[10] *SACSCOC Principle 5.2.a.*

[11] *Rationale and Notes for SACSCOC Principle 5.2.a., in* SACSCOC RESOURCE MANUAL FOR THE PRINCIPLES OF ACCREDITATION 35 (4th ed. 2024) (alteration in original).

[12] *Id.*

[13] *Keyishian v. Board of Regents of Univ. of State of New York*, 385 U.S. 589, 603 (1967).

[14] *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

[15] *See Meriwether v. Hartop*, 992 F.3d 492, 507 (6th Cir. 2021).