**UNIVERSITY OF KENTUCKY**
**J. DAVID ROSENBERG COLLEGE OF LAW**
**LAW FACULTY RULES AND POLICIES**

**Revised June 30, 2024**

These rules are intended to be consistent with the Governing Regulations and Administrative Regulations of the University of Kentucky and the laws of the Commonwealth of Kentucky and of the United States of America.  In the event that these rules are inconsistent with or contrary to those regulations and laws, then those regulations and laws control.

**Table of Contents**

1. Meetings of the Faculty and Faculty Committees ......................................................3
2. Dean's Consultation with Faculty and Executive Committee....................................4
3. Class Scheduling ......................................................................................................5
3A. Determination of Credit Hours for Coursework.......................................................6
4. Student Class Performance .....................................................................................8
5. Outside Employment ................................................................................................9
6. Withdrawal by Students ............................................................................................9
7. Completion of Course Work and I Grade................................................................ 11
7A. Externships ........................................................................................................... 12
8. Examinations ......................................................................................................... 12
9. Grades ................................................................................................................... 13
10. Requirements for Graduation................................................................................ 16
10A. *Pro Bono* Recognition ........................................................................................ 22
11. Part-Time Students ............................................................................................... 23
12. Visiting Committee ................................................................................................ 24
13. Faculty Performance Expectations........................................................................ 25
14. Procedures for Appointment, Reappointment, Tenure and Promotion ............ 29
    A. Introduction......................................................................................................... 29
    B. Faculty Appointments.......................................................................................... 29
    C. Progress Toward Tenure and Reappointments ................................................... 30
    D. Promotion and Tenure ........................................................................................ 30
    E. Provisions Governing the Director of the Legal Clinic ....................................... 33
    F. Provisions Governing the Director of the Law Library ......................................... 35
    G. Provisions Governing Law Library Faculty (Excluding the Director of
       the Law Library)................................................................................................. 37
    H. Provisions Governing the Director of the Legal Research and
       Writing Program ............................................................................................... 45
    I. Provisions Governing the Position of Legal Research and Writing Faculty ... 47
15. Kentucky Law Journal ........................................................................................... 53
16. Kentucky Journal of Equine, Agriculture & Natural Resources Law.................... 55
17. Joint Appointments................................................................................................ 56
18. Interdisciplinary Fellows........................................................................................ 58
19. Honor Code ........................................................................................................... 59
20. Distribution of Law Faculty Rules and Policies ..................................................... 63
21. Approval and Modification of Law Faculty Rules and Policies ............................... 63

Appendix: Parental Modified Duties Policy: Draft Recommendation........................ 64

2

# 1. Meetings of the Faculty and Faculty Committees

### A. Scheduling of faculty meetings

The Dean shall schedule regular monthly faculty meetings during the academic year at a time reserved for such meetings on the class schedule.  The Dean shall schedule additional faculty meetings as needed.

### B. Notices of meetings

The Dean or the Dean's designate shall post notices of all faculty meetings and Chairs of faculty committees shall post notices of committee meetings on the College of Law website.

### C. Quorum for faculty and committee action

A quorum for the transaction of business at a meeting of the faculty or a faculty committee shall be fifty percent of those eligible to vote at the meeting.

### D. Rules of order

Those presiding over faculty and committee meetings shall conduct business according to Robert's Rules of Order.

### E. Procedures

1. Minutes

(a) The secretary of the faculty shall record and report transactions of faculty meetings, including key points made in the deliberations.

(b) The faculty secretary shall distribute faculty meeting minutes to the faculty by e-mail within a reasonable time after the meeting.  In addition, the Dean or the Dean's designate shall maintain a file of electronic and printed copies of the minutes.

2. Proxies

(a) Faculty members may vote at faculty and faculty committee meetings only if actually present, with the following exceptions:

(I) When less than 24 hours notice is given of a faculty meeting scheduled for the regular weekly faculty meeting period or less than 72 hours notice is given of a faculty meeting at another time, a written proxy may be given to the Dean.

(II) When a faculty meeting is called for a period other than the regular weekly faculty meeting period, and the meeting conflicts with a regularly scheduled class of a faculty member, that member may leave a written proxy with the Dean.

(III) If a faculty committee chairman chooses to allow proxies, and within a reasonably short time after his or her appointment notifies each committee member that proxies will be permitted, and a majority of the committee does not object, a committee member may leave a written proxy for meetings of that committee with the chairman.

1. Meetings of the Faculty and Faculty Committees

(IV) The faculty or a faculty committee may accept a written proxy by unanimous consent.

(b) Any proxy must be specific as to the decision to which the proxy shall apply and shall indicate how the proxy shall be voted.

(c) Nothing in this policy precludes absent faculty members from having their statements read at meetings.

(d) Nothing in this policy precludes absent faculty members from having minutes amended to indicate how they would have voted.

(e) This policy does not preclude the tenured faculty or full professorate from adopting a different rule for proxies for their votes in the tenure and promotion process.

**F. Student opinion**

1. There is established in the College of Law a Student Advisory Council composed of the following five members:

President of Student Bar Association
Vice President of Student Bar Association
First Year Class Representative
Second Year Class Representative
Third Year Class Representative

2. The Student Advisory Council shall select two of its members (hereinafter called Faculty Representatives) to present student opinion to the Faculty.

3. The Faculty Representatives shall forward to the Faculty any views submitted in writing by students to the Student Advisory Council, which views are within the competence of the Student Advisory Council as defined herein.

4. The Faculty Representatives shall also be entitled to appear at "regular" (i.e., not "tenured") Faculty Meetings so as to present written or oral information and advice on agenda items which are within the competence of the Student Advisory Council as defined herein.

5. The Dean's Office, except in extraordinary circumstances, shall make available to members of the Student Advisory Council, an agenda for scheduled Faculty Meetings. The Student Advisory Council will receive notice of the agenda the same time the faculty does.

6. The competence of the Student Advisory Council and its Faculty Representatives shall extend to presenting student opinion with regard to the development of educational policies.

## 2. Dean's Consultation with Faculty and Executive Committee

**A. Faculty performance and salary recommendations**

If the Dean is required by the Governing or Administrative Regulations of the University of Kentucky to seek the advice of members of the law faculty, individually or as a group, or an advisory committee of the faculty, on matters of the periodic evaluation of faculty performance or salary recommendations, then the Dean shall obtain the advice of the Faculty Executive Committee on those matters.

4

2. Dean's Consultation with Faculty and Executive Committee

### B. Budget recommendations

Before submitting the College of Law budget proposal to the University, the Dean shall notify the faculty of the proposal under consideration and provide an opportunity for the faculty to present their recommendations.

## 3. Class Scheduling

### A. Policy

Classes should be scheduled without reference to the convenience or inconvenience of student employment schedules.

### B. Capping

Normally, an upper level course will not have more enrolled students than a number equal to half the size of a class. Enrollment in upper level courses may be capped at a lower number at the discretion of the instructor, in consultation with the Associate Dean for Academic Affairs, after consideration of such factors as: (1) room size and availability, (2) course availability, and (3) the distribution of the teaching load. This determination should be made early enough to be noted in the Curriculum Planning Guide.

### C. Curriculum Planning Guide

It is the sense of the faculty that the listing of the subjects tested by the Kentucky Bar Examination may be misleading to students considering their course selection in the upper levels and it should be deleted from the Curriculum Planning Guide.

### D. Schedules and elective courses

Law courses are either required or elective and are planned to provide a well rounded curriculum of such content as to give the student a balanced legal education. To this end, term programs are based on groups of courses for each "category" of students. Normally a category is composed of all students who first entered upon law during a given semester. Any student desiring to substitute in a particular term any course not offered to his category must obtain the permission of the Dean or the Dean's designate for approving schedules.

### E. SBA Forum hours

No classes will be scheduled during an SBA Forum hour.

### F. Make up classes

No make up classes will be scheduled on any of the last ten calendar days (i.e., including weekends) preceding the final day of regularly scheduled classes, except where necessary to make up a class missed during those ten days.

5

4. Student Class Performance

## 3A. Determination of Credit Hours for Coursework

Standard 310(a) of the American Bar Association Standards and Rules of Procedure for Approval of Law Schools requires that: "A law school shall adopt, publish, and adhere to written policies and procedures for determining the credit hours that it awards for coursework." These policies and procedures are intended to comply with Standard 310.

### A. Credit Hour Calculation and Tracking

For courses of all types, a minimum of 42.5 hours of academic work per credit hour is required. The manner of documenting and tracking this work will vary depending upon nature of the course. The following sections outline default procedures for the most common types:

#### 1. Traditional Lecture Courses with Final Examinations

Lecture courses with final exams should require "not less than one hour of classroom or direct faculty instruction and two hours of out-of-class student work per week" per credit hour over fifteen weeks, exam period included. Fifty minutes of classroom time shall satisfy the hour of required instruction; student hours of out-of-class work shall be sixty minutes.

As guidance for determining the length of time to complete reading assignments, academic literature indicates that an average law student reads ten to thirty pages per hour (60 minutes), depending on the difficulty of the material.

Any faculty member who must miss a regularly scheduled class session for any reason must schedule the equivalent amount of work over the semester. For terms other than the standard fall and spring, the calculated distribution of required times shall conform to the session length rather than for the default fifteen weeks.

#### 2. Legal Research and Writing Courses, Seminars, and Simulations

Classroom time for legal research and writing courses, seminars, and simulations may be scheduled so that class meeting times may be achieved through class meetings or direct faculty instruction and may vary from week to week. The combined total of 42.5 hours of academic work includes time spent in class or under direct faculty instruction, time preparing for class or simulations, and time completing required assignments or simulations.

Ways of calculating out-of-class student work time include: by conducting a review of scholarly literature on the topic; by having a group of students log the time required to complete assignments; by having students report the amount of time spent on written assignments when they submit the assignments; or by having students report the amount of time spent on coursework during the semester when they complete end-of-term course evaluations.

#### 3. Clinical Courses and Externships

Students enrolled in clinical courses and academic externships must complete required hours and submit time keeping records in accordance with established clinic and externship policies. Credit may be withheld for any student who fails to comply with recordkeeping and reporting requirements.

#### 4. Independent Studies (Research Problems)

Students shall submit detailed timesheets to their primary supervising faculty member every two weeks. Students must complete a minimum of 85 hours of research and writing work for two units of

6

3A. Determination of Credit Hours for Coursework

credit. Credit may be withheld for any student who fails to comply with recordkeeping and reporting requirements.

5. Co-Curricular Courses

Students shall submit detailed timesheets to their faculty advisor every month, unless the faculty advisor indicates in writing that student work product (outputs) will be used to determine hours of work related to credit(s) earned. Students must complete a minimum of 42.5 hours of related work for each unit of credit.  Credit may be withheld for any student who fails to comply with recordkeeping and reporting requirements.

**B.  Readings and other assignments shall be indicated on the course syllabus.**

1. By the last day of classes in a given semester, all course instructors shall submit their course syllabi to the Associate Dean of Academic Affairs. In so doing, a course instructor certifies that out-of-class student work for the course meets the requirements of Standard 310(b)(1).

2. The Associate Dean of Academic Affairs shall keep all course syllabi on file and review them on a regular basis to determine whether assignments of out-of-class work comply with Standard 310(b)(1).

**C. Courses Taken in Other Colleges at the University of Kentucky**

1. As part of the approval process for allowing a non-dual-degree College of Law student to enroll in a course in another college at the University of Kentucky, the student shall provide to the Associate Dean of Academic Affairs a copy of the course syllabus and written certification from the course instructor that it complies with Standard 310(b).

2. For non-law courses within the dual degree programs offered by the College of Law and other schools at the University of Kentucky for which College of Law students will receive credit toward the J.D. degree, the student shall provide to the Associate Dean of Academic Affairs the syllabi of such courses and written certification from the course instructors that the courses comply with Standard 310(b).  The student shall provide these materials to the Associate Dean of Academic Affairs prior to the start of the semester in which the student is enrolled in said courses.

**D. Courses Taken at Another Law School**

1. As a condition of approval of a College of Law student's application to visit away at another ABA-approved law school, the Associate Dean of Academic Affairs or the dean's designee must obtain a written assurance from the school offering the course that the units of credit for the course(s) comply with Standard 310(b).

2. As a condition of approval of transfer credits by the College of Law, the Associate Dean for Academic Affairs or the dean's designee must obtain a written assurance from the school from which an applicant is seeking to transfer that the units of credit for the courses taken comply with Standard 310(b).

**E. Course Approval**

All proposals for new courses must include a paragraph justifying the number of units of credit to be awarded. The Associate Dean of Academic Affairs shall keep these justifications on file. In approving new courses, the College of Law Curriculum Committee and Faculty will determine whether the number of units of credit to be awarded complies with Standard 310(b).

7

4. Student Class Performance

## 4. Student Class Performance

### A. Class attendance

Every student must maintain attendance satisfactory to the instructor in each of his classes. A student may be excluded from any course for excessive absences upon the recommendation of the instructor, with the concurrence of the Dean.

### B. Excessive absence rule

Whenever any student has been absent from 25% of the total of any class meetings in any course, in any term, for whatever reason, he shall be disqualified to take the final examination in such course or to receive credit therefor. For the purposes of this rule, the following numbers of absences shall be deemed to constitute 25%: 4 absences in any 1-hour course, 7 absences in any 2-hour course, 11 absences in any 3-hour course, 14 absences in any 4-hour course. Absences in classes that meet for longer than 50 minutes shall count as absences in a number of classes determined by the proportion that the number of minutes the missed class bears to 50 (for example, an absence from a class that meets for 75 minutes shall count as an absence from one and one-half class meetings). Instructors may require special makeup assignments for absences not amounting to 25%, and may take unexcused absences into account in the final grade of the student along with the quality of daily work done, provided that the instructor acts in a manner consistent with a written policy distributed to the student in the first or second class meeting.

### C. Procedure on violation of Rule IV.B.

Whenever an instructor determines that a student has exceeded the number of absences permitted by Rule IV.B. above, the faculty member shall notify the Dean or Dean's designate of the violation and shall request that the Dean or Dean's designate notify the student that they have been disqualified from taking the final examination in the course and from receiving credit therefor. Such notification shall be by letter to all addresses for the student on file with the University Registrar. In addition, the Dean or Dean's designate shall make other reasonable efforts to notify the student. Upon notification, the student must initiate withdrawal by requesting the Dean or the Deans designate to permit withdrawal with a grade of W. If the student fails to initiate the withdrawal or cannot be located, the Dean, the Dean's designate, or the faculty member may initiate withdrawal. If the withdrawal is initiated during the first half of the semester, the student may withdraw with a grade of W without the approval of the Dean or Deans designate or faculty member. During the last half of the semester, withdrawal requires the approval of the Dean or Deans designate after consultation with the faculty member. If withdrawal is not initiated or approved as provided herein, the student shall remain enrolled in the course and shall earn a grade of E for the course.

### D. Class preparation

Effective instruction in the College of Law requires preparation of daily assignments by students. The case and problem method cannot be effectively used when students are not prepared. Therefore, the instructor may exercise wide discretion in taking action deemed necessary to ensure that classroom performance will be maintained at a high level.

8

6. Withdrawal by students

## 5. Outside Employment

### A. Policy

Employment during the school semester often impairs a student's ability to devote the time needed for full time law school study.  Accordingly, the law faculty strongly urges first-year law students not to undertake any employment, except in extraordinary circumstances and only after consultation with and approval by the Associate Dean for Academic Affairs. The Associate Dean should generally decline to approve the request of a first-year student to work for more than ten hours per week. In no event may the Associate Dean approve employment, nor may a first-year student work, for more than twenty hours per week during the academic year.

Students in second and third year need not seek approval by the Associate Dean before undertaking employment during the school semester. Second- and third-year students are prohibited from working for more than twenty hours per week during the academic year.

This policy applies to employment outside of the law school and to employment by the College of Law.

### B. Notice of policy

1. The faculty rule regarding outside employment shall be communicated to students through, inter alia, (1) in the College of Law Bulletin; (2) materials provided to entering students; (3) the Curriculum Planning Guide; (4) first year Orientation; and (5) a notice posted on the bulletin board of the Career Services Office; and (6) the College of Law web site.

2. The Career Development Office shall inform employers who advertise for term-time student workers through Career Development Office about this rule.

### C. Enforcement of Policy

1. The Career Services Office shall inform any employer of this rule if the employer seeks to employ a law student for more than twenty hours per week during the term.

### D. Scholarship and grant funds

A concerted effort should be made to increase scholarship and grant funds, as well as other financial aid, for law students; prospective entering students should be apprised of the available aid.

## 6. Withdrawal by Students

### A.  General policy

All students at the College of Law are expected to complete their degree requirements without interruption other than for regularly scheduled vacation periods.  It is expected that students will complete all courses or seminars in which they are enrolled.  The following rules govern the situations where exceptions to this policy are necessary.

### B. Withdrawal from the College and University

1. First year students are expected to complete their first year of law study without interruption.  If a student withdraws from the College and University during his or her first year of law study, readmission is not automatic.  If a student withdraws during the first semester of law study,

9

6. Withdrawal by Students

applications for readmission will be referred to the Admissions Committee; if a first year student withdraws during the second semester, applications for readmission will be referred to the Academic Status Committee; provided that in either of the above withdrawal situations, the Dean or the Dean's designate may grant a special leave of absence for the balance of the academic year for reasons relating to extended illness or equivalent distress.

2. After completion of all required first year courses, a student who withdraws from the College of Law and the University is subject to the rules stated herein regarding readmission after a leave of absence and grades for students who withdraw. To officially withdraw from the College of Law, a student must report to the University Registrar's Office to obtain a withdrawal card; this card must be signed by the Dean of the College of Law or the Dean's designate. If a student plans to complete a semester, but not reenroll for the subsequent semester, he or she must give the Dean or the Dean's designate written notice of such intention.

C. Withdrawal from individual courses or seminars

A second year student, a third year student, or a first year student with special permission of the Dean or the Dean's designate may withdraw from any course or seminar within the first half of a semester or summer session. To withdraw from a course or seminar within the first half of a semester or summer session, the student must obtain permission of the Dean or the Dean's designate. A student may withdraw from a course or seminar during the last half of a semester or summer session only on petition certifying reasons relating to extended illness or equivalent distress. This petition must be approved by the Dean or the Dean's designate, with notice to the instructor after withdrawal. The instructor must assign a grade of W if the petition is approved.

D. Readmission after a leave of absence

1. If a student withdraws from the College and University or does not continue enrollment and has complied with paragraph B(2) of this rule, the student will routinely be readmitted to the College provided that the student is in good standing and the absence was not longer than two semesters plus one summer term. No student will be readmitted pursuant to this paragraph more than one time.

2. A student who intends to remain away from the College for more than two semesters plus one summer term must request permission for a Leave of Absence. These requests are not routinely granted and will be referred to the Academic Status Committee for recommendation to the Dean.

3. Readmission for students who are not entitled to readmission pursuant to paragraphs B, D(1), or D(2) of this rule is not automatic. Applications for such readmission will be referred to the Academic Status Committee for a recommendation to the Dean. The Academic Status Committee may consider all relevant facts and circumstances, including the length of time out of the College and reasons for the absence. The Committee and Dean will normally not approve readmission for any student who has been away from the College for six regular semesters. Reasonable conditions, including the repetition of courses for no credit, may be imposed if readmission is approved.

10

# 7. Completion of Course Work and I Grades

### A. Completion of course work

Students in all courses, seminars, and other College of Law programs are expected to complete their course work within the semester during which the course is offered. In examination courses, this means taking the exam at the regular scheduled time. In courses where papers comprise all or part of the course work, such papers must be submitted at the times fixed by the instructor but in no event later than the last day of the scheduled exams for the semester. In clinical courses, all work must be completed at the times fixed by the instructor. Failure to complete College of Law work within the limits described in this paragraph shall result in an E grade unless the student withdraws from the course or receives an I grade. An I grade shall be awarded only as provided below.

### B. Alternative dates for examinations

Alternative dates for examinations are governed by Rule 8.B., below.

### C. Late papers

A student unable to submit a paper by the scheduled time for submission because of urgent reasons relating to illness or extraordinary circumstances may request permission from the faculty member to submit a paper after the regular scheduled time for submission. Such a request shall be made or confirmed in writing and shall particularize the reasons for the request. Evidence of the reasons for the student's inability to submit the paper at the scheduled time may be required. The faculty member may:

    1. Permit a delay in submission until any date prior to the last day of the examination period for the semester; or

    2. Recommend to the Dean or Dean's designate a delay in submission until a specified date subsequent to the last day of the examination period; or

    3. Deny the request.

### D. I Grades for incomplete work

    1. Faculty members may submit an I grade for students who fail to complete required course work. Submission of I grades is governed by _____(update with new cross-reference).

    2. Effect of Incompletes on Academic Status

The Faculty of the College of Law, the Law Faculty Academic Status Committee, or the Dean may act with regard to a student's status without reference to the presence of one or more I grades on the student's record.

# 7A. Externships

### A. Definition; standards

Externships are opportunities for students to obtain legal experience outside of the traditional classroom under the supervision of licensed attorneys. All externship employers must be government

7A. Externships

or nonprofit entities. A student may not receive compensation for externship work for which the student receives credit, but reasonable out-of-pocket expenses related to the externship may be reimbursed.

### B. Credit hours

Academic credit granted shall be commensurate with the time and effort required of and educational benefit received by each student. It is expected that students will devote at least 50 hours of work (excluding travel time) in an externship for each credit hour granted.

### C. Approval

An externship must be approved by the faculty through the Curriculum Committee, as with any new course. An externship may be approved on an experimental basis, to be offered no more than twice without permanent approval. Externship proposals must contain: (1) a clear statement of the goals and methods of the program and how the program is structured to achieve those goals and objectives; (2) the name and qualifications of the faculty member (who may be an adjunct faculty member) responsible for the course; (3) provisions for evaluation of the student's academic performance by the faculty member and the field supervisor (where extant); (4) opportunities for student reflection and academic discussion through seminars, tutorials, guided reflection, or other methods.

### D. Supervision and Evaluation

All externships shall be supervised by a full-time faculty member or the Associate Dean of Academic Affairs. This supervision will include an on-site evaluation before the externship is approved and periodically thereafter as the Associate Dean determines is necessary and appropriate. Each student shall be given the opportunity to anonymously evaluate the externship course. At the end of each academic year, the Associate Dean or faculty Director of Externships shall prepare a written report on and evaluation of each externship, which shall be kept on file at the College of Law and will be shared with the faculty member responsible for the externship instruction.

## 8. Examinations

### A. Monitoring

Some system of monitoring examinations is highly desirable. The Dean should strongly recommend that individual faculty members monitor their examinations or trade off with other teachers so that all examinations will be monitored by a faculty member. Another option is to hire persons (other than law students) to serve as proctors.

### B. Alternative dates

The applicable examination rule in the College of Law will be <mark>(?) Update with new cross reference.</mark>

### C. Lost examination papers

Loss or theft of a professor's examination books was treated as follows in February, 1975: students whose papers were not recovered were awarded a grade equal to their cumulative average including work through and including the fall semester 1974, and given the option of taking another examination if they wish to try to achieve a higher grade. Those exercising the examination option would make a binding election and would have to abide by the results of the examination rather than choosing the higher of the two grades afterward.

12

# 9. Grades

### A. Average grades

**1. General rule.** The average grade in each course shall be in the range of 3.0 to 3.2.

**2. Exceptions.**
**a. Specified courses.** The average grade shall be in the range of 3.0 to 3.5 in courses defined in Rule 10(B)(3) and the graded courses that satisfy the Experiential Course Requirement in 10(C)(1). The average grade shall be in the range of 3.0 to 3.3 in the first-year Legal Research and Writing course.

> **Commented [JB1]:** This change was approved at the faculty meeting on September 30, 2021. Not sure if that edit date should be included here.

**b. Small-enrollment courses.** In any other course, not described above, with enrollment of 16 or fewer, the average grade shall be in the range of 3.0 to 3.4.
**c. Incoming high grade point average.** In any other course, not described above, in which the grade point averages of the enrolled students (weighted equally) average to 3.2 or more, the average grade shall not exceed that average. An instructor wishing to take advantage of this exception must request this calculation from the College of Law Registrar before the last day of classes for the term in question.
**d. Research Problems (Independent Study).** In Research Problems (Independent Study), there is no required average grade.
**e. First-year courses.** The average grade shall be in the range of 2.9 to 3.1 in first-year courses other than Legal Research and Writing.

**3. Procedure.** When an instructor submits grades, the College of Law Registrar will calculate the class grade point average. If it is not within the required range, the Registrar shall return the grades to the instructor. Grades that do not meet the requirements of this rule are not "submitted" for purposes of the grade deadline in part C of this rule.

### B. Anonymity

For each course the faculty member will designate whether grading of examinations is to be anonymous or non-anonymous and the students will be advised of this prior to submitting graded work, and if possible, prior to registration.

### C. Deadline for submission of grades

Grades are due in the Dean's Office as follows:

1. Not later than midnight five days before the beginning of the Spring Semester for Fall Semester grades. Because the Spring Semester generally begins on a Monday, this deadline will generally fall on the Wednesday of the week before the Spring Semester begins.
2. Not later than three weeks after the conclusion of exams for Spring Semester grades.
3. Not later than two weeks after the conclusion of the course for Summer Semester grades.

(Rule 9.C was approved by vote of the Faculty on November 16, 2022.)

> **Commented [JB2]:** We no longer have any law students who matriculated before Fall 2020. Any student who sought readmission if they had started before 2020 would be ineligible for graduation, based on the 84 month rule. Therefore, I believe it is appropriate to delete the section describing the rules applicable to students who began before Fall 2020.

9. Grades

### D. Probation, Suspension, Repetition of Courses

**1. Probation.**

**a. Placement on probation.** A student is placed on probation in any of the following circumstances.

**i.** After completion of the first semester, the student's grade point average is below 2.0.

**ii.** After completion of any other semester, the student's cumulative grade point average is below 2.2.

**b. Consequences of probation.** A student on probation:

**i.** Must have all course enrollments approved by the Associate Dean for Academic Affairs;

**ii.** May not have outside employment;

**iii.** Must raise his or her grade point average as follows:

**(A).** In the first following Fall or Spring semester to 2.2 for that semester, and, by the end of the second following semester, to a cumulative average of 2.2; or

**(B).** If the first following Fall or Spring semester is intended to be the student's final semester, to a cumulative average of 2.2 by the end of that semester.

**iv.** Must enroll in and attend all Academic Success classes offered during the period of probation.

**v.** May not graduate from the College of Law.

**c. Removal from probation.** A student who meets requirements (i) through (iv) of subsection 1(b) of this rule shall be removed from probation.

**2. Suspension.**

**a. Placement on suspension.** A student is suspended from the College of Law if

**i.** The student is on probation and fails to meet the requirements (i) through (iv) of subsection 1(b) of this rule within the time frame provided; or

**ii.** The student's cumulative grade point average is below 2.2 at the end of any Fall or Spring semester after having been removed from probation under subsection 1(c) of this rule.

**b. Consequences of suspension.** A student on suspension may neither attend nor graduate from the College of Law.

**c. Removal from suspension.** A student may not be removed from suspension except upon approval of the College of Law faculty (after consideration by the Academic Status Committee) and the Dean. The faculty may impose additional academic standards in individual cases, and in any case may impose other reasonable conditions of readmission including, but not limited to, specification of schedule of study (including specification of particular courses and limitation of hours), and the limitation of extracurricular activities. The faculty may also require the repetition of courses either with or without substitution of the grades awarded in the courses retaken. The student may have an opportunity to be heard at any Committee or faculty meeting hereunder. A student removed from suspension is placed on probation for the student's next semester or summer term but is not thereby subject to subsection 2(a)(ii) of this Rule. A student suspended for a second time may not be removed from suspension.

**3. Repetition of courses.** Any student who receives a grade of E in a required course must reregister for the course and complete all requirements therefor. A student who receives a grade of "D+" or lower in any first-year class must repeat that class until the student receives a grade of "C-" or better. When such a required course is retaken or when a student elects to repeat an elective course in which the student received a failing grade, both the initial and subsequent grade will be reflected on the student's record and counted in the computation of grade point average for purposes of this Rule and Rule 10(A).

14

> **Commented [JB3]:** The addition of "fall and spring" in these three places was approved by the faculty at the meeting on 9/30/21. Not sure if we should add the edit date here.

9. Grades

**E. Calculation of averages**

Wherever an average is calculated under this Rule or Rule 10(A), it shall be carried to the tenths place. This means that the digit in the tenths place will be increased by one if the hundredths digit is 5 or greater, but the digit in the tenths place will be unchanged if the hundredths digit is 4 or less. All digits beyond the tenths place will otherwise be ignored.

[Rule 9(E) added on May 9, 2019]

# 10. Requirements for Graduation

### A. Juris Doctor degree

Students admitted to the College of Law are eligible for the degree of Juris Doctor (J.D.) upon completion of a minimum of three academic years (six full time semesters or equivalent) of residence and 90 semester hours of courses in the College of Law with a grade point average of at least 2.2. All courses in the first year of law study are required, as is a course in professional responsibility, an upper division writing course, six upper division substantive courses, and six credit hours of experiential courses.

### B. Upper Division Writing Course

1. To graduate from the College of Law, a student must successfully complete an upper division course that has an approved writing component.

2. A course with an approved writing component must require the following:

(a) The completion of a written document or documents that comprise, in total, at least 25 double-spaced pages, inclusive of footnotes and endnotes, for a two-credit course, or at least 40 double-spaced pages, inclusive of footnotes and endnotes, for a three-credit course. At least fifty percent of the student's final grade must be based on the student's written submission. The student's written submission must demonstrate substantial independent research and original thought.

These documents may include traditional legal research papers or one or more memoranda or other transaction-related or litigation-related writings, so long as the student's work is the result of substantial independent research, and the student's written work product totals at least 25 or 40 pages, inclusive of footnotes and endnotes, as outlined above in this section B(2)(a)

(b) The submission of at least one preliminary draft of the document or documents, on which the Faculty Member will make detailed criticisms, suggestions, and comments, with a particular view toward improving the forcefulness, effectiveness, methodological soundness, and/or persuasiveness of the student's written expression. During the course of the semester, the Faculty Member must have at least one private consultation with each student to discuss the student's draft.

3. Courses that satisfy this writing requirement shall include:

(a) Seminars, which are courses with limited enrollment of no more than sixteen students, the primary focus of which is the preparation of a substantial research paper and the oral presentation and defense of that paper to the entire class. In extraordinary circumstances,

15

10. Requirements for Graduation

the Dean may increase or decrease the enrollment in a seminar. All courses approved as seminars are deemed to satisfy the Upper Division Writing Requirement.

(b) Other courses that have, as their focus, the completion of a substantial writing project (or projects) that satisfy the requirements listed in subsection (B)(2)(b) of this rule. The faculty must specifically approve each non-seminar course as satisfying the Upper Division Writing Requirement under this rule.

(c) The course in Research Problems (often referred to as "independent study") if the course satisfies the requirements listed in subsection (B)(2)(b) of this rule, unless the course is taken in the student's final semester of legal studies. A faculty member may not supervise more than three (3) independent study projects in one semester without the prior approval of the Dean.

### B1. Upper Division Substantive Courses

A student must successfully complete Professional Responsibility as well as six of the following courses: Administrative Law, Business Associations, Constitutional Law II, Criminal Procedure, Evidence, Family Law, Secured Transactions, Taxation I, Trusts and Estates.

### C.1. Experiential Course Requirement

1. A student must successfully complete one or more "experiential" courses totaling at least six credit hours. An experiential course is a simulation course, law clinic, or externship, and is designated as such in the law school's official course catalog with faculty approval. To "successfully complete" the course means to receive a final grade other than E or F.

2. A course may be designated as "experiential," and added to the law school's official course catalog, as contemplated in sub-section (1) above, if the faculty determines that the course meets the requirements of 2015-16 ABA Standards 303(3), 304 and 305 and Interpretation 305-3, or any successor Standards or Interpretations. A course may be deleted from the list of "experiential" courses in the course catalog by the Dean (or the Dean's designate) if he or she determines that the course no longer meets these requirements or if the course is no longer offered.

### D. Pass-fail courses

In determining the number of hours credited toward the requirement for the J.D. degree:

1. No more than 6 hours of graduate courses outside of the College of Law shall be counted. All such courses must be approved by the faculty in advance. The College of Law will assign a grade if P if a student receives an A or B in the course; the College of Law will assign a grade of E if the student receives a C, D or E.

2. No more than 9 hours of courses in the law school that are offered on a pass-fail basis shall be counted.

3. No more than 12 of the total number of pass-fail credit hours, whether earned under 1. (above) or under 2. (above) shall be counted.

4. No more than one graduate school course outside the law school, graded on a pass-fail basis, may be credited in any one semester.

16

10. Requirements for Graduation

Students in joint degree programs may only take up to nine pass-fail course credit hours in the College of Law and may take no courses outside the College of Law for credit toward the J.D.

**D1. Mandatory Pass/Fail Grading for Spring 2020 Courses**

> **Commented [JB4]:** Perhaps it is time to delete this rule? Or leave it in for reference if anything like this ever happens again?

(1) All courses in the Spring 2020 term will be graded on a pass-fail basis.

(2) Credits awarded in courses which are currently taken pass-fail will be counted for purposes of the limitation on pass-fail hours in Faculty Rule 10(D). All other pass-fail credits awarded under this rule will not be counted for purposes of the limitation on pass-fail hours.

(3) All students will be evaluated by the instructor as if this rule were not in effect. The instructor will assign a letter grade for each student in the course (unless the course is already designated pass-fail in the catalog). The registrar will substitute a grade of "P" for any grade other than "E" or "I." The grades of "E" or "I" will not be changed by this rule. The grading information reported by the instructor of each course shall not be communicated to the student. The student will receive only the grade of P when the student is determined to have passed the course. The award for the highest grade in the class will not be awarded in any class for the Spring 2020 semester.

(4) All requirements for class attendance and participation remain unaffected by this rule.

(5) When providing transcripts to students who completed courses during the Spring 2020 semester, the Registrar shall provide a statement to students explaining that, because of the unprecedented effects of the Covid-19 pandemic, the College of Law faculty with University approval required that all courses be graded on a pass/fail basis.

(6) Notwithstanding the terms of other faculty rules, the conditions imposed on students readmitted to the College who are not in good academic standing are suspended for the Spring 2020 semester because of the unprecedented effects of the Covid-19 pandemic.

(7) Students will be informed that they have the academic right under University Senate Rule 6.1.3.2 "to receive fair and just grades." This rule states that "[s]tudents have the right to receive grades based only upon fair and just evaluation of their performance in a course as measured by the standards announced by their instructor(s) in the written course syllabus at the first class meeting." College of Law faculty have decided, based on the emergency conditions arising from the Covid-19 pandemic and its unprecedented impact on the College, University, and community, that mandatory pass-fail grading for all courses is the fair and just method for evaluating student performance in all such courses. If any student believes that the grade received is not a fair and just evaluation, the student has the right to appeal the grades received. That appeal will proceed without the student being advised of any of the letter grades that were awarded, because such an appeal would relate to the award of the grade of pass or fail, rather than the particular letter grade. The student will receive the letter grade awarded if the student prevails in this appeal. In that event, the student would retain the right to appeal the letter grade received.

[Adopted by the faculty, March 26, 2020; approved by the University Senate, March 30, 2020.]

**E. Evaluation of College of Law Clinic**

The Law Clinic will be evaluated on a yearly basis by the Dean and Associate Dean of the College of Law after consultation with the Faculty and other appropriate groups and individuals. A written report

17

10. Requirements for Graduation

based on this evaluation will be made and will be provided to the Faculty and other interested parties. This yearly evaluation and report will include a determination of whether and to what extent the goals of the clinic are being achieved and a review of these goals to determine whether any change is needed in these goals for the upcoming year

### F. Credit for Foreign Study

The faculty of the College of Law believe that the study of international law, as well as the study of the legal systems and cultures of other countries, contributes to and enhances students' legal education. When the College of Law has an opportunity to develop a relationship with a foreign law school so that interested students may have an opportunity to study abroad at the foreign law school, the College of Law should seek to develop that relationship to permit qualifying students to study abroad. Such foreign study should be approved only when it is determined that the study will enhance a student's legal education. Any such foreign study is subject to the following requirements:

(1) Foreign study is available only to students eligible to receive a J.D. degree from the College of Law and in good standing at the College of Law. Such students are permitted to study abroad only after the completion of their first year of study and may spend no more than two semesters of study at any foreign institution;

(2) A proposed course of foreign study must be approved in advance by the Associate Dean for Academic Affairs. The course of study must comply with the ABA Criteria for Student Study at a Foreign Institute (the ABA Criteria);

(3) Students may earn no more than 35 credit hours toward the J.D. degree outside the College of Law. This includes credit hours from foreign institutions (which may not exceed 30 credit hours), other ABA-approved law schools as a visiting student, and graduate-level courses taken outside the College of Law;

(4) In order to count credit hours earned under this rule toward the J.D. degree, students must earn a grade of C or higher (or the equivalent grade) in each course. Credit hours will be applied toward the J.D. degree on a pass-fail basis, and grades earned at the foreign institution will not be reflected in a student's College of Law GPA or class rank;

(5) No more than six students may undertake study at any particular foreign institution(s) within a three-year period that includes the current academic year and the two previous academic years;

(6) A full-time faculty member at the College of Law familiar with the course of study at the foreign institution must act as sponsor of the student's foreign study. This faculty sponsor is responsible for performing the review of the student's course of study in accordance with the ABA Criteria;

(7) Courses taken at a foreign institution shall not satisfy the upper division writing requirement or the Professional Responsibility course requirement;

(8) Credit will be given only for approved academic coursework at the foreign institution. Credit will not be provided for participation in foreign externships and any other program foreclosed by the terms of the ABA Criteria;

(9) Student study at a foreign institution must comply with all other rules promulgated from time to time by the College of Law administration for purposes of compliance with the ABA Criteria.

18

## 10A. *Pro Bono* Recognition

### A. Pro Bono Award

Upon the completion of 50 hours of independent law-related public service, a student shall receive the College of Law Pro Bono Award. While many of the components of recognition of this award should lie within the discretion of the Dean, at a minimum, the award should include a certificate and recognition of the students who have received the award at the College of Law graduation ceremony. A record of the award should be retained in the student's permanent record at the College of Law.

### B. Total Hours and Time Period

In order to receive the award, a student must complete 50 total hours of independent law-related public service as defined in Part C below. Except as provided in Part E below, the work must be completed after the student has completed his or her first year.

### C. Definition of Pro Bono Activities

"Pro bono activities" are defined as independent law-related public service activities.

　　1. "Independent" means activities for which the student:

　　　　(a)　　does not receive compensation;
　　　　(b)　　does not receive a Summer Public Interest Law Stipend; and
　　　　(c)　　has not received academic credit.

　　2. "Law-related public service" means public service that attempts to alleviate social problems relating to legal processes, or otherwise addresses problems that attorneys and law students are well equipped to solve using legal skills or other skills that lawyers normally utilize. Such law-related public service can be provided to the following: one or more individuals; organizations seeking to secure or protect civil rights, civil liberties or public rights; or charitable, religious, civic, community, government and educational organizations in matters in furtherance of their organizational purposes. Such law-related public service must be conducted under the supervision of a licensed attorney and the participating student must comply with the requirements of Parts D. and E. below.

### D. Activity Pre-approval and Reporting Requirements

Independent law-related public service hours may be earned in 1) a College of Law sponsored pro bono activity or 2) in an activity developed by individual students with the prior approval of the Dean or his designate. All hours earned must be reported to the Dean or his designate at the time and in the manner prescribed.

### E. First Year Student Participation in Pro Bono Program

First year students may participate in the pro bono program only through College of Law sponsored pro bono programs that are approved for first year participation by the Dean or his designate.

11. Part-Time Students

## 11. Part Time Students

### A. Full time study

Because the study of law at the University of Kentucky is a full-time pursuit, all law students are expected to carry a full academic program (15 semester hours) and to devote their full time to the study of law.

### B. Policy

There is no part time curriculum in the College of Law. Otherwise qualified students may be admitted by the Admissions Committee to take less than a full first year course load only in the following circumstances:

1. with appropriate contingent conditions, one of which will require that the first year course of study be completed in a period not to exceed two academic years; and

2. after the committee has considered all factors special to the situation, including but not limited to:

(a) the policy of the University to provide educational opportunities for U.K. employees;

(b) any extraordinary personal circumstances;

(c) the applicant's ability to provide diversity to the student body.

### C. Reporting

At the beginning of each semester, the Associate Dean will supply to the faculty a listing of any first year students who were not taking the full load and why; and to update that listing to show first year students who drop more than one course during the semester.

## 12. Visiting Committee

### A. Purpose and function

The purpose for the Visiting Committee is to enlist the interest and support, and to gain the insights, of a group of distinguished alumni and lawyers who serve on a voluntary basis. The Committee is asked to visit the College of Law at least once each year, for one to two days. During these visits, the Visiting Committee is to become acquainted with the faculty and representative segments of the student body, and familiarize itself with the program and goals of the College of Law, as well as with any problems it faces. At the conclusion of its visit, the Visiting Committee is be asked to formulate suggestions in the form of recommendations concerning improvements, new directions, and available means for the solution of any existing problems. The Visiting Committee communicates its recommendations to the Dean, the President, Provost and/or the Board of Directors of the Law Alumni Association.

The Visiting Committee should not encroach upon the functions of the Law Alumni Association Board, even if the latter should decide annually to hold one of its periodic meetings at the College of Law, setting aside a day for that purpose in order to "visit" the school.

20

12. Visiting Committee

### B. Structure

The Visiting Committee is composed of at least 35 members appointed to four-year terms by the President of the University. Terms are renewable for up to four additional years. No member shall serve for more than eight years, unless he or she is serving beyond eight years as Chair or Vice-Chair or rolls off of the Visiting Committee for at least one year after eight years of continuous service. Nominations may be suggested to the President by the Dean, the Law Alumni Association Board of Directors and the Faculty. In order to create staggered terms which will provide a measure of continuity coupled with a steady inflow of new ideas, periodic adjustment of the membership may be made by the President, upon recommendation of the Dean. The Visiting Committee will regularly elect a Chair and Vice-Chair, each to serve for a coterminus term of two years, renewable for up to two additional years.

The President of the Law Alumni Association will serve as a member, ex officio, of the Visiting Committee during his or her term of office.

Committee members will bear their own traveling expenses in attending the annual meeting.

### C. Selection Criteria

Each member of the Visiting committee should be a law trained person who has attained a high level of achievement in his or her chosen career, and who enjoys the respect of the legal community. While status as an alumnus of the College of Law will weigh in favor, it is not a condition of selection. Nominees may be persons who have demonstrated an especial interest in the College, but can also be persons whose involvement and interest the College seeks to cultivate. Effort will be made to seek diversity among the members in order to reflect the diversity of law practice and law related careers engaged in by the Alumni of the College.

## 13. Faculty Performance Expectations

### A. Teaching

The primary mission of this law school is to provide a high quality legal education for its students. Effective teaching, therefore, is the most important element of an individual's performance as a member of the faculty. It takes substantial time to acquire and maintain a thorough understanding of course materials and to plan for an effective presentation of those materials in the classroom. It takes additional time to meet the educational needs of students outside the classroom.

The amount of time necessary for accomplishing effective teaching, however, is in part dependent upon the experience of the individual faculty member. For a year or two after initial appointment to the faculty a conscientious attempt to satisfy this responsibility may take most or all of a faculty member's available time. For a short span of years thereafter, while the individual masters the fields of law in which he or she teaches, the teaching responsibility may continue to make a more substantial demand on time and energy than all other faculty responsibilities combined. At the end of this period of years (which, for most, will be approximately five years depending upon prior experience), and certainly by the time a faculty member has achieved the rank of full professor, the demands on time and energy to meet the teaching responsibility are usually much less severe than before. The teaching of a new course, the use of a novel approach in an old course, or an unusually heavy course load can alter the situation. In general, however, it must be recognized that a beginning teacher and a moderately experienced one will typically need to invest more of his or her total work effort in the teaching responsibility than will an established teacher.

The burden of satisfying the teaching responsibility can never be spread among the faculty with total uniformity. Some courses and teachers will consistently attract more students than will others. Some

21

13. Faculty Performance Expectations

courses will always experience more dramatic and frequent change in content than will others. Some courses will require a more time-consuming approach than others. In varying degrees these differences affect the kind of work effort needed to satisfy the teaching responsibility. Nevertheless, the faculty expects each of its members to shoulder a fair share of the institution's obligation to provide quality teaching.

### B. Research

The existence of an obligation to teach effectively and conscientiously a full load of courses is a matter which is taken for granted by the faculty. The same should be true with respect to the existence of an obligation to engage in productive research and creative scholarship. The advancement of legal knowledge broadly defined is an obligation of every good law school. Scholarship provides insights and new knowledge which enhance teaching effectiveness. Furthermore, the quality and quantity of a faculty's published research are frequently the only public measure of a law school's worth and reputation. Every member of the faculty of every rank, therefore, has a responsibility to engage in activity directed toward scholarship and research. This responsibility is second in importance only to teaching as an element of an individual's performance as a member of the faculty. And it should be regarded as a very close second.

Research and scholarly activity of the faculty as a whole take many forms. The most common manifestation of such activity is the law review article. Contributions may be made in many other ways (for example, the publication of casebooks and textbooks, papers and speeches, legal development surveys, book reviews, law reform proposals, etc.). No faculty member should feel pressured to engage in a particular kind of research activity or to seek any particular kind of outlet for his or her scholarly effort. No faculty member, however, should feel free to ignore the obligation to engage in serious and continuous scholarly activity and to reduce the results of that activity to writing so that others may benefit from it.

It is difficult to describe with accuracy the magnitude of an adequate research effort by a member of the faculty. In 1966 the faculty adopted a statement of policy concerning the criteria for promotion and tenure. Several observations in that statement of policy speak to the matter of faculty research expectations. The following ones seem to offer the most specific guidance on the issue:

The law teaching profession expects that an Associate Professor of Law will have conducted serious scholarly research. After the first few years in teaching, the traditional expectation, as was noted by the late Dean Roscoe Pound, is for a law teacher to publish one article every other year. (Pound, Law Teachers and Law Teaching, 3 J. of Legal Ed. 519, 532 (1951).) He may have in print any number of speeches, panel remarks or publicly delivered papers, but these are considered embellishments to his research efforts and not the primary manifestation of his work. Absent publication of serious and worthwhile law review articles, no quantity of these lesser quality publications suffice to evidence mature research capability . . . .

However, there are many forms of research activity deemed functionally equivalent to such a stream of law review articles. Long-term research in the form of work on a scholarly book, delivery of a series of exceptional lectures, or papers or speeches, preparation of casebooks or other types of law teaching materials may involve several years of work, and are deemed "functionally equivalent" to short-term research culminating in law review articles .... Continuous work compiling legal materials for publication in a purely commercial context to be sold to practitioners may be deemed functionally equivalent to the above-stated norm, if it embodies new ideas, concepts, organizational principles or research data.

(P)romotion to full Professor is a determination that the individual's meritorious attainments during his associateship demonstrate clearly his mature research and professional potential in the field of legal

22

13. Faculty Performance Expectations

education. Full professorship in law teaching is not so much a reward for past achievements as it is recognition of the mature research potential thereby evidenced in a manner designed to spur incentive for developing that potential.

High quality scholarship is only slightly less important to the overall mission of the law school than high quality teaching. The faculty expects each of its individual members to shoulder a fair share of the institutional obligation to engage in quality research. It expects each member of the faculty to have a continuous program of research and to produce creative scholarship on a regular basis.

### C. Service

Service to the law school, the University, and the public is the third component of faculty performance. While not constituting as significant a portion of a faculty member's responsibility as teaching and research, such service is nonetheless a substantial element of each faculty member's obligation to the institution.

Each member of the faculty is expected to participate regularly and responsibly in the processes through which institutional policy is formulated and implemented. In addition each member is expected to share in the demands on time and energy that result from the routine operation of the school. At a minimum a faculty member should regularly attend faculty meetings, perform committee assignments responsibly, attend law school functions appropriate for faculty (such as student banquets, graduation, etc.), help with the supervision of student groups and organizations (such as the law journal staff, the moot court board, etc.), and bear part of the burden of informal advising of students on their professional and educational problems.

Service to the institution includes service to the University. The faculty recognizes its obligation to participate fully as an important component of the larger institution. A faculty member should bear a reasonable share of the duties inherent in the law school's full participation in the operation of the University. Such service is valuable to the University and the law school and is to be encouraged.

Service to the profession and public is also a part of this third component of faculty performance. Members of the faculty should seek opportunities for involvement in professional and public affairs that relate to their work at the University. Such activities should not be permitted to impinge on the capacity of the faculty member to perform the principal responsibilities of teaching and research at a high level. But distinguished professional and public service, particularly continuing legal education, pro bono legal representation, and law reform efforts, is highly valuable to the school and to the faculty members who provide it.

### D. Full-time effort

The law school is and should continue to be staffed with faculty members who are full-time teachers and scholars. Indeed the accreditation policies of the Association of American Law Schools provide that a "faculty composed largely of full-time teachers is the very heart of a successful program of legal education." Part-time instruction in certain specialty areas, such as bankruptcy, litigation skills, and legal writing is a valuable part of the school's overall program. Additionally, part-time instruction may be necessary on a temporary basis to fill a program need created by the absence of regular faculty. In general, however, the faculty is fully committed to the AALS policy regarding full-time faculty members.

The AALS provides the following guidelines as to the meaning of full-time faculty status:

Full-time teachers are those who devote substantially their entire time to their responsibilities as teachers, scholars, and educators. This does not preclude professional activities outside the law

23

13. Faculty Performance Expectations

school if so limited as not to divert the faculty member from his primary interest and duty as a legal educator.

The faculty expects that each of its members, in accordance with the AALS guideline, will devote substantially all of his or her efforts during the contract period of employment to the performance of his or her responsibilities to the institution.

Professional activities outside the law school, in the form of consultation or professional practice, can be valuable to the institution and compatible with the demands of full-time faculty status. Such activities frequently enable faculty members to perform their teaching and research responsibilities at a higher level and enhance the reputation of the institution and of the individual faculty members involved. On the other hand such activities have an almost limitless potential to undermine the performance and competence of the faculty as a whole. If not properly limited, they can adversely affect the quality of teaching and attention given law students as individuals, the scholarly interest and performance of the faculty, the participation of faculty in important law school functions, and much more. Consequently both the Dean and the faculty are obligated to do whatever is necessary to keep such activities within proper limits.

University regulations place at least two significant limitations on outside professional activities of faculty members: (1) such activities may not be undertaken without prior approval of the Dean and Provost; and (2) such activities may not exceed 39 days during the academic year of August 15 through May 15. Additional limitations on outside professional activities result from the institution's obligations under the following AALS policy:

In determining whether outside professional activities are properly limited, the following factors, among others, are of great importance:

    i. The extent to which the field of outside activity coincides with the full-time teacher's major fields of interest as a scholar and teacher;

    ii. The character of the professional activity as a source of novel and enriching experience that can be directly utilized in his capacity as an educator;

    iii. The degree to which the demands of the outside activity interfere with the teacher's regular presence in the law school and with his availability for consultation and interchange with students and colleagues;

    iv. The extent to which the outside activity may properly be characterized as public service, as distinct from the pursuit of private purposes.

The foundation underlying these limitations is the fundamental notion that full-time teachers should not engage in professional activities outside the law school that divert them from their primary interests and duties as legal educators. The faculty of this college is wholeheartedly committed to this notion. Consequently it expects each of its members to abide by the above-stated limitations carefully and completely.

### E. Work Effort Distribution Model

This model is applicable to all faculty members in their fifth or subsequent year of law teaching. The below ranges are not intended to define or restrict the amount of time to be devoted to the various areas of performance. For purposes of performance evaluations, each such faculty member may designate the weighting factor to be used in evaluating performance in each of the three following categories:

24

13. Faculty Performance Expectations

1.  TEACHING:  Minimum 40% - Maximum 55%.

This area of performance includes classroom teaching, preparation (including research) for classroom teaching, clinical supervision, and student advising.

2.  RESEARCH:  Minimum 35% - Maximum 50%.

This area of performance includes research for publication and for public presentations (speeches, law reform work, and so on)  of a substantial scholarly nature.

3.  SERVICE:  Minimum 5% - Maximum 25%.

This area of performance includes service to the law school, university, and profession, as well as uncompensated public service of a legal nature.

Those faculty members with less than five years of law teaching experience and other faculty members for whom the above model is unrealistic due to extraordinary circumstances, shall determine their work effort distribution by agreement with the Dean. Similarly, those faculty members who find their actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of their work effort distribution by agreement with the Dean.

DISTRIBUTION OF EFFORT FORM

_____
Name

In accordance with the faculty's action of April 29, 1985, I would like my performance in each of the following areas to be weighted as indicated for my merit evaluation for calendar year _____.

I.       TEACHING:  (Minimum 40% - Maximum 55%)   _____

II.      RESEARCH:  (Minimum 35% - Maximum 50%)   _____

III.     SERVICE:  (Minimum 5% - Maximum 25%)        _____

Other values for those faculty members with less than five years of law teaching experience and other faculty members for whom the above model is unrealistic due to extraordinary circumstances, must be determined by agreement with the Dean. Similarly, those faculty members who find their actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of their work effort distribution by agreement with the Dean.

_____        _____
Signature - Faculty Member                   Signature - Dean

## 14.  Procedures for Appointment, Reappointment, Tenure and Promotion

### A. Introduction

13. Faculty Performance Expectations

The University of Kentucky Administrative Regulations ("Administrative Regulations") provide policies and procedures concerning faculty appointments, promotions, grants of tenure, and related matters. The College of Law's procedures for Appointment, Reappointment, Tenure and Promotion contained herein ("College of Law Procedures") describe the manner in which the College complies with the Administrative Regulations. Within the College's committee structure, the Retention, Promotion and Tenure Committee ("RPT Committee") is the committee charged with the general responsibility for implementing the College of Law Procedures. The Dean of the College or Chair of the RPT Committee shall provide each new faculty member with a copy of the College of Law Procedures during their first semester of service. A set of the current Administrative Regulations shall be accessible in the Dean's Office to all faculty. All faculty should familiarize themselves with the College of Law Procedures and Administrative Regulations and should feel free to seek guidance concerning them from the Dean of the College or the Chair of the RPT Committee.

## B. Faculty appointments

The Administrative Regulations provide policies and procedures concerning the appointment of faculty at various levels and ranks.

1. Regular faculty appointment. The Appointments Committee is a part of the College's committee structure and is the advisory committee concerned with initial Regular faculty appointments. It is this committee's function to search for and screen candidates for initial appointment to the Regular faculty at the rank of Assistant Professor or higher, and to make recommendations concerning such appointments to the Regular faculty. In the College of Law all initial appointments to the rank of Assistant Professor or higher are made after the Regular faculty has been consulted and collectively made a recommendation to the Dean. Normally the RPT Committee is not concerned with initial appointments. However, the terms of an initial appointment may be relevant to matters within the scope of the RPT Committee. For example, an initial appointment might be made with tenure.

2. Law Library and Clinical appointments. The search for and screening of candidates for initial appointment to the Law Library and Clinical faculty shall be done by ad hoc search committees appointed as necessary when vacancies occur.

3. Temporary faculty appointments. Temporary faculty are those faculty not covered in the above two categories. Initial appointments of temporary faculty shall be done by the Dean (or Dean's designate) with input from the faculty or a committee of the faculty as appropriate. Where time or other circumstances do not allow faculty consultation prior to considering candidates for a position, the Dean (or Dean's designate) will give faculty notice of an intended hiring of a temporary faculty member.

4. Faculty in all title series shall be invited to be present at the research and other presentations by candidates for positions in other faculty title series and shall be allowed an opportunity to offer comments on the candidates to the relevant search committee.

## C. Progress toward tenure and reappointments

The Administrative Regulations provide policies and procedures concerning progress towards tenure and reappointment of faculty. In the College of Law the tenured members of the faculty will meet during the course of each academic year to consider the performance of all non-tenured faculty members. The tenured faculty will consider the progress of each non-tenured faculty member based on information supplied by that faculty member to the Dean's Office including the Performance Information Forms provided pursuant to the Annual Merit Review and such other information as is developed by the Dean and the RPT Committee. The RPT Committee shall report to the tenured faculty

26

14. Procedures for Appointment, Reappointment, Tenure and Promotion
B. Faculty Appointments

concerning the progress towards tenure of each non-tenured faculty member and may further make a recommendation that the individual be offered reappointment for the following academic year or years, given notice of termination, or offered a terminal reappointment. After due deliberation the tenured faculty shall report to the Dean regarding the progress of each non-tenured faculty member and may further recommend that the individual be offered reappointment for the following academic year or years, given notice of termination, or offered a terminal reappointment. After the tenured faculty has made a report or recommendation concerning a non-tenured faculty member and a decision has been reached, the Dean will advise the latter of his or her status. If a decision not to reappoint or to offer a terminal reappointment is made, the Dean will, at the affected faculty member's request, discuss the circumstances surrounding the decision.

## D. Promotion and tenure

### 1. Responsibility for evaluation

The Administrative Regulations provide policies and procedures concerning promotion and tenure. They require, inter alia, that a recommendation to promote and/or grant tenure originate with the Dean of the College of Law and that in preparing a recommendation the Dean consult with appropriate faculty.

In the College of Law the members of the faculty who will be consulted and who collectively shall make a recommendation to the Dean concerning a promotion will be those members of the faculty holding a rank equivalent to or higher than the rank for which the individual is being considered. In the case of a tenure decision the tenured members of the faculty will be consulted and collectively shall make a recommendation to the Dean. For each recommendation to promote and/or grant tenure the Administrative Regulations require, inter alia, the written judgment of each faculty member consulted.

The Retention, Promotion and Tenure (RPT) Committee is the college advisory committee on promotion and tenure referred to in the Administrative Regulations. It is the RPT Committee's function to develop and administer procedures to assist in the evaluation of non-tenured faculty and of candidates for promotion and/or tenure. The committee will advise the Dean with or without a recommendation for promotion and/or tenure as it deems appropriate. The RPT Committee will administer the preparation of materials, including preparation of the promotion and tenure file and dossier prepared in connection with the promotion and/or tenure decision.

The RPT Committee also constitutes the college advisory committee on reappointment of temporary faculty, as defined in part B(3) of this rule. It will develop and administer procedures to assist in the evaluation of these faculty members for recommendation for reappointment as appropriate.

### 2. Promotion and tenure file

The RPT Committee will maintain in the Dean's office a "promotion and tenure" file on each non-tenured faculty member and on each associate professor. The following materials should be included in the promotion and tenure file, and should be updated annually by the faculty member, in cooperation with the Dean. Unless otherwise indicated, the file should include all relevant items since the faculty member's initial appointment or most recent promotion, whichever is later.

(1) Notices of Academic Appointment and Assignment
(2) A curriculum vitae as of the beginning of the most recent academic year
(3) Performance information forms and distribution of effort forms
(4) The most recent teaching portfolio
(5) Student evaluations: a compilation of all numeric score averages for the professor and for the faculty as a whole for each semester. Narrative comments need not be provided.

27

14. Procedures for Appointment, Reappointment, Tenure and Promotion
D. Promotion and Tenure

(6) Reports of peer classroom visits
(7) Publications
(8) Any other material the faculty member wishes the Committee, the faculty, and the Dean to consider.

3. Teaching ability and potential

In developing information regarding the teaching ability and potential of a faculty member the RPT Committee will employ one or more of the following methods.

(a) Periodic formal student evaluation normally occurring at the conclusion of a particular course. Normally faculty before the rank of full professor with tenure will be evaluated in at least one course per semester. Normally a course shall be evaluated not later than the third time that it is taught. In each semester faculty members have the option of being evaluated in a seminar instead of a course. It is normally expected that temporary faculty members will be evaluated in every course.

(b) Evaluation by randomly selected recent graduates. This evaluation will not relate to particular course(s) or seminar(s) and will be developed through the use of a questionnaire containing two or three questions designed principally to obtain a narrative description of teaching performance and perhaps a judgment relating the individual's teaching performance to the performance of law teachers in general.

(c) Class visitation of non-tenured faculty by other faculty members. Except for temporary faculty, normally such visitations will not be scheduled during a non-tenured faculty member's first and second semesters of teaching. Thereafter, visits shall be scheduled during each semester until a decision not to retain or to recommend tenure has been reached. All of the non-tenured faculty members' courses shall be visited, but normally visits will be limited to one course per semester. The committee will select "visitors" from among the faculty, and all faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. Every effort shall be made to include among the visitors all faculty members with expertise in the subject areas of the non-tenured faculty member's courses. Any faculty member whose class is to be visited shall have an opportunity to object to the choice of a particular visitor and have the objection and reasons therefore considered by the committee in selecting visitors. The objection to the visitor and reasons therefore shall be noted in the faculty member's promotion and tenure file at his or her request. After the visitors have been selected they will consult with the teacher to be visited to obtain course assignments and to reach an understanding concerning the times of visitation. Normally two visitors will observe a particular course for two class hours during a semester but one visitor may be used in the case of temporary faculty. The visitors will file individual written evaluations with their names thereon in the Dean's office for inclusion in the promotion and tenure file. The committee will make copies of the evaluations without the name of the visitor available to the visited teacher upon request. In each semester faculty members may request to be evaluated in a seminar instead of a course, and the RPT Committee shall consider that request in selecting the course or seminar to be evaluated.

(d) Class visitation of tenured but not-fully-promoted faculty by other faculty members. Class visits will be scheduled once every academic year for tenured faculty members who have not been fully promoted. Two visitors will evaluate one course for one class session each academic year. The committee will select the course to be evaluated in consultation with the faculty member. The committee will select "visitors" from among the fully-promoted faculty, and all fully-promoted faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. Any faculty member whose class is to be visited shall have an opportunity to object to the choice of a particular visitor and have the objection and reasons therefore considered by the

28

14. Procedures for Appointment, Reappointment, Tenure and Promotion
D. Promotion and tenure

committee in selecting visitors. The objection to the visitor and reasons therefore shall be noted in the faculty member's promotion file at his or her request. After the visitor has been selected the visitor will consult with the teacher to be visited to obtain course assignments and to reach an understanding concerning the times of visitation. The visitor will file an individual written evaluation with his or her name thereon in the Dean's office for inclusion in the promotion file. The committee will make copies of the evaluations without the name of the visitor available to the visited teacher upon request. Faculty members may request to be evaluated in a seminar instead of a course, and the RPT Committee shall consider that request in selecting the course or seminar to be evaluated.

4. Scholarly productivity

The RPT Committee will employ the following methods to evaluate and to assist others in evaluating the scholarly productivity of a faculty member who is a candidate for promotion and/or tenure. Normally the process of evaluation will commence prior to the academic year in which the candidate is recommended for promotion and/or tenure.

(a) The members of the committee, within the limits of their own competence, will study and evaluate the candidate's scholarship.

(b) The committee will give other members of the faculty, especially those who have special competence in the candidate's field, the opportunity to submit a written evaluation of the candidate's scholarship. Any faculty member may submit to the committee a written evaluation of the candidate's work. Such written evaluation if submitted shall be in addition to the overall evaluation of the candidate required by AR 2:1-1.

(c) In consultation with the Dean and the candidate the committee shall solicit letters of evaluation from persons outside the College of Law who are familiar with the candidate's area(s) of scholarship. The solicitation shall comply with the requirements of the Administrative Regulations for letters solicited by the Dean from qualified persons outside the University and the letters shall be included in the dossier in the event that one is prepared.

(d) While the committee recognizes that it is impossible to compile an exhaustive list of criteria by which another's scholarly effort should be measured, it believes that the following are among the more important indications of a substantial research effort:

(1) The work delineates the problem area.
(2) The work apprises the reader, when appropriate, of the current state of inquiry with respect to the problem.
(3) The work demonstrates a mastery of knowledge considered relevant to the particular problem.
(4) The work demonstrates a high level of analytical proficiency.
(5) The work reveals a capacity to synthesize ideas and data from diverse sources and disciplines.
(6) The work demonstrates that the author commands the research tools appropriate to the task.
(7) The work demonstrates the skillful use of analogy, factual and theoretical.
(8) The work reflects a well-developed critical capacity.
(9) The work reflects ability to develop new models or make additions to previously developed models.
(10) The work reflects a capacity to be creative, imaginative, and original.

(e) In addition to requesting an evaluation of the candidate's scholarship, the solicitation shall also ask the referee's judgment on the candidate's teaching and service. The

29

14. Procedures for Appointment, Reappointment, Tenure and Promotion
D. Promotion and Tenure

solicitation shall include the candidate's teaching portfolio and statement on service to permit evaluation of these areas.

## E. Provisions Governing the Position of the Director of the Legal Clinic

**[NOTE: This Rule 14E applies only to appointments or reappointments made prior to July 1, 2024.]**

1. Appointment in Clinical Title Series.

The Director shall be appointed in the clinical title series under the University of Kentucky's Administrative Regulations (AR II- 1.0-1, Page IX-1). All appointments and promotions under the clinical title series are without tenure.

2. Criteria for Appointment, Retention, Promotion, and Performance Evaluation

Three areas of activity are important in the evaluation for individuals for initial appointment to the position of, and in retention, promotion, and annual performance reviews of the Director. These areas of activity are: (a) administration, teaching, and legal representation relative to the Legal Clinic's operation and program, which area of activity shall constitute the majority of the Director's responsibilities; (b) professional status and activity; and (c) College of Law, University, and public service. The criteria for evaluation in performance in these areas of activity include:

(a) Administration and teaching: Demonstrated ability and competence in the administration of the Legal Clinic (including securing external funding), in teaching of the Legal Clinic course (Law 959) and related skills courses (including classroom instruction, individual instruction, advising, and informal influence on students – academic and professional growth), and in providing high quality legal representation to clients of the Legal Clinic.

(b) Professional status and activity: Demonstrated interest and achievement in participating in and attaining recognition outside the University for law-related activities involving legal educational organizations and bar, professional, civic and other associations, including participation in continuing legal education programs and speaking and writing on topics related to clinical legal education.

(c) College of Law, University, and public service: Demonstrated interest and achievement in service to the College of Law, University, and the public. Such service includes participation in faculty activities and meeting, committee work, and other activities related to the operation of the College of law, in University committee work as assigned, and in law reform and other law-related activities on behalf of the public interest.

3. Procedures for Evaluation of Performance

As a non-tenured faculty member, the Director shall be evaluated annually in writing by the Dean using the Faculty Performance Information Form and Distribution of Effort Form and applying the criteria provided in Paragraph II.

4. Ranks and Their Criteria Within the Clinical Title Series

The academic ranks applicable to the Director shall be: (a) assistant clinical professor of law; (b) associate clinical professor of law; and (c) clinical professor of law. The criteria for these ranks are as follows:

30

14. Procedures for Appointment, Reappointment, Tenure and Promotion
E. Provisions Governing the Position of the Director of the Legal Clinic

(a) Assistant Clinical Professor of Law: Initial appointment to the position of Director shall generally be made at the rank of assistant clinical professor of law and require at a minimum a degree in law, substantial practice experience in the range of legal problems of the needy, proven administrative abilities and experience, capacity for success in securing external funding, and potential for productivity, service, and professional growth.

(b) Associate Clinical Professor of Law: Appointment to the rank of associate clinical professor of law shall be made upon demonstration that the individual under consideration, in addition to possessing the minimum requirements for initial appointment at the rank of assistant clinical professor of law, has shown continuous productivity and achievement in the areas of activity of the Director sufficient to have attained regional recognition for excellence.

(c) Clinical Professor of Law: Appointment to the rank of clinical professor of law shall be made upon the demonstration that the individual under consideration, in addition to possessing the minimum requirements for appointment as associate clinical professor of law, has shown continuous outstanding productivity and achievement in the areas of activity of the Director sufficient to have attained national recognition for excellence.

5. Limitation

Appointment, retention, and promotion within the clinical title series create no entitlement to any claim or justifiable expectation regarding temporary or permanent appointment to the Faculty of the College of Law in the regular or special title series.

6. Participation in Faculty Governance

The Director may participate fully on issues of faculty governance and College of Law policy, including voting at faculty meetings, with the exception of decisions on appointment, retention, promotion, tenure, and termination of faculty in the regular or special title series.

7. Non-Compensatory Perquisites

The Director shall be provided the same non-compensatory perquisites as provided for tenure-track faculty, including administrative assistance, support for professional activities, library and technology support, and travel funds, but not including sabbatical leaves.

8. Period of Appointment

Appointment of the Director shall be on a twelve-month basis.

9. Term of the Contract

The initial appointment of the Director shall be for a term not to exceed three years, which shall serve as a probationary period.  The appointment may thereafter annually be renewed for one more or additional terms each not to exceed five years.

10. Termination of Employment

After the initial appointment, the employment of the Director shall be terminable during the term of an appointment only for good cause. Good cause for termination includes the discontinuation or material modification of the Legal Clinic. Notice of termination of employment at the end of a term of appointment, other than for good cause, shall be given to the Director at least one year prior to that termination.

31

14. Procedures for Appointment, Reappointment, Tenure and Promotion
E. Provisions Governing the Position of the Director of the Legal Clinic

### 11. Modification

The provisions contained in this Section 14.E. shall only be subject to modification by the Dean upon recommendation of the Faculty of the College of Law.

## F. Provisions Governing the Position of Director of the Law Library

### 1. Appointment

#### a. Nature of Appointment

The Director of the Law Library holds an appointment in the College of Law as a Professor of Law (Assistant, Associate, or full Professor).

#### b. Appointment Procedures

When a vacancy occurs in the position of Director of the Law Library, the Dean shall appoint an ad hoc committee to search for and screen candidates for the position and to make recommendations to the Regular and Law Library faculties. After receipt of the committee's recommendation, the Regular faculty and the Law Library faculty shall make separate collective recommendations to the Dean regarding the appointment. Appointment of the Director of the Law Library shall be made by the Dean after consideration of these recommendations.

### 2. Criteria for Reappointment

The Dean and faculty of the College of Law will evaluate the Director of the Law Library for reappointment according to the procedures in subpart C of this Part 14 and the substantive standards in subpart F(4) below.

### 3. Criteria for Promotion and Tenure

The Dean and faculty of the College of Law will evaluate the Director of the Law Library for promotion and tenure according to the procedures in subpart D of this Part 14 and the substantive standards in subpart F(4) below.

### 4. Standards for Reappointment, Promotion and Tenure

The performance of the Director shall be evaluated by reference to the following standards.

a. Library Administration and Teaching. This means: administrative, professional and intellectual competence. Competent library administration and classroom teaching are the principal components of this standard. Other standards include: creativity and initiative in the performance of professional responsibilities; effectiveness in applying subject knowledge and bibliographic techniques in organizing library collections; professional skill in pursuing user needs and in stimulating faculty and student utilization of library services and resources through individual and formal instruction; and a willingness to consider and to accept new ideas and alternative approaches to library services. This standard includes elements of the first and third areas of activity for promotion and tenure in the regular title series.

b. Research. This means: awareness of current developments in the law library profession and appropriate subject fields; scholarly accomplishments as demonstrated by research and publication; and application of library innovations to the organization and operation of the law

32

14. Procedures for Appointment, Reappointment, Tenure and Promotion
F.  Provisions Governing the Position of Director of the Law Library

library. This standard includes elements of the second area of activity for promotion and tenure in the regular title series.

c. Professional, University or Community Service. This means: active participation in improving the law library profession, and other service related to the general welfare of the University or community. This standard includes elements of the third area of activity for promotion and tenure in the regular title series.

5.  Work Effort Distribution Model

This model is applicable to the Law Library Director. Percentage ranges are intended as guidelines for the amount of time to be devoted to the various areas of performance. For purposes of performance evaluations, the Law Library Director, in consultation with the Dean, may designate the weighting factor to be used in evaluating performance in the following categories described in subsection 4 of this section:

1)  Library Administration and Teaching    (Minimum 65% - Maximum 80%)

2)  Research  (Minimum 15% - Maximum 35%)

3)  Professional, University or Community Service (Minimum 5% - Maximum 20%)


DISTRIBUTION OF EFFORT FORM – LAW LIBRARY DIRECTOR

_____
Name

In accordance with the College of Law faculty rules, I would like my performance in each of the following areas to be weighted as indicated for my merit evaluation for calendar year _____.


I.    LIBRARY ADMINISTRATION AND TEACHING: (Min. 65% - Max. 80%)        _____

II.   RESEARCH: (Min. 15% - Max. 35%)                                                              _____

III.  PROFESSIONAL, UNIVERSITY OR COMMUNITY SERVICE: (Min. 5% - Max. 20%) _____


_____
Signature – Law Library Director


_____
Signature – Dean

33

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

### G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

1. Appointment

a. Nature of Appointment

Law library faculty hold Librarian faculty appointments in the Librarian Series (i.e., Librarian IV, III, II or I), with such ranks being analogous to the academic titles of Instructor, Assistant Professor, Associate Professor, and Full Professor, respectively. AR 2:7. Effective July 1, 2010, the rules in this subpart G apply to all law library faculty except the Director of the Law Library.

b. Appointment Procedures

When a vacancy occurs in the Law Library faculty, the Director of the Law Library shall appoint an ad hoc search committee after consultation with the Dean. It is this committee's function to search for and screen candidates for the position and to make recommendations to the Law Library faculty. After receipt of the committee's recommendation, the Law Library faculty shall make a collective recommendation to the Director of the Law Library regarding the appointment. Appointment to a position on the Law Library faculty shall be made by the Dean after consideration of this recommendation and consultation with the Director of the Law Library.

2. Criteria for Reappointment

Initial tenure-eligible appointments at the ranks of Librarian IV, III, and II shall be made on a two year basis.  Subsequent renewal appointments for non-tenured law library faculty will normally be made on a two year basis, subject to annual review, and the processes will be generally parallel to those applicable to regular title series faculty members of equivalent academic rank. The Dean of the College of Law, in consultation with the Director and the Law Library Faculty Retention, Promotion and Tenure (LLFRPT) Committee, will evaluate the law library faculty for reappointment according to the procedures in subpart C of this Part 14, and the expectations, criteria and standards in subparts G(3)-(5) below.

3. Faculty Performance Expectations

The Law Library serves the broad educational mission of the University of Kentucky College of Law, supporting the curriculum and research needs of the College's students, faculty, and staff. As a primary source of legal information in Kentucky, the Law Library also supports the state judiciary, legal practitioners, and citizens of the Commonwealth.

Law Library faculty are expected to perform in their primary roles, as well as to conduct their professional development and service activities, in ways that support the Library's and the College's overall mission and operations.

a. Primary Librarianship Responsibilities

Law library faculty should, as applies to individual positions, competently and creatively perform their professional responsibilities; effectively apply subject knowledge and bibliographic techniques to building, organizing, and maintaining library collections; skillfully meet user needs; facilitate and encourage use of library resources; or, develop, sustain, and grow any applicable administrative skills necessary to competently perform their responsibilities.

b. Professional Growth and Development

34

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

An obligation to maintain and sustain a level of professional growth and development, including scholarly activity, informs the core activities and principles that comprise librarianship. Law library faculty members have a role to play in the advancement, use, and implementation of legal information. That role can take many paths, such as exploring techniques of and models of research, furthering the study of the organization and selection of resources, or providing insights into how future technologies will have an impact upon legal information and its role in the legal profession.

Activities in this area can take many forms, including scholarly research, professional engagement, or continuing education. Law library faculty should, as applies to individual positions, contribute to the advancement of the law librarianship profession by actively participating in professional organizations at the state level or higher, and demonstrating an interest in current developments and trends in the profession.

c. University or Community Service

Service to the College, to the institution, or to the community is an obligation of each law library faculty member. Conscientious participation in institutional governance and policy-making not only informs librarianship but benefits the Law Library and the College. As such, institutional service is a foundational requirement that should only be augmented by community service; it should not be replaced by it.

Service and institutional activities include participating in institutional governance, contributions to the College's educational curriculum, or university or community service in the interest of law librarianship or information science, studies, or technology.

d. Work Effort Distribution Model

This model is applicable to law library faculty (excluding the Law Library Director). Percentage ranges are intended as guidelines for the amount of time to be devoted to the various areas of performance. For purposes of performance evaluations, law library faculty members, in consultation with the Law Library Director, may designate the weighting factor to be used in evaluating performance in the following categories:

1)    Primary Librarianship Responsibilities (Minimum 65% - Maximum 80%)

This area of performance includes competent performance of regular library duties, including Reference/Information Service; Library Instruction; Technical Services; Information Technology; Collection Management; Administration; Other Primary Activities.

2)    Professional Growth & Development    (Minimum 15% - Maximum 35%)

This area of performance includes research for publication and for public presentations, and participation in professional organizations.

3)    Service  (Minimum 5% - Maximum 25%)

This area of performance includes service to the law school, university, and law library professions, as well as uncompensated library- or information-related nature.

Other values for those faculty members for whom the above model is unrealistic due to extraordinary circumstances, must be determined by agreement with the Law Library Director.

35

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

DISTRIBUTION OF EFFORT FORM – LAW LIBRARY FACULTY

_____
Name

In accordance with the College of Law faculty rules, I would like my performance in each of the following areas to be weighted as indicated for my merit evaluation for calendar year _____.

I.      PRIMARY LIBRARIANSHIP RESPONSIBILITIES: (Min. 65% - Max. 80%)        _____

II.     PROFESSIONAL GROWTH & DEVELOPMENT: (Min. 15% - Max. 35%)        _____

III.    SERVICE: (Min. 5% - Max. 25%)                                        _____

        Other values for those faculty members for whom the above model is unrealistic due to extraordinary circumstances, must be determined by agreement with the Law Library Director. Similarly, those faculty members who find their actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of their work effort distribution by agreement with the Law Library Director.

_____
Signature - Faculty Member

_____
Signature – Law Library Director

_____
Signature – Dean

                e. Promotion and tenure file.

The requirement of a promotion and tenure file as specified in Section 14, part D, subpart 2 shall also apply to law library faculty. The following materials should be included in the file and should be updated annually. Unless otherwise indicated, the file should include all relevant items since the faculty member's initial appointment or most recent promotion – whichever is later – related to the following:

        1)    Notices of Academic Appointment and Assignment
        2)    A curriculum vitae as of the beginning of the most recent academic year
        3)    Performance information forms and distribution of effort forms
        4)    Research
        5)    Publications
        6)    Presentations
        7)    Library Service
        8)    Public & University Service
        9)    Professional Activity & Service
        10)   Professional Development
        11)   Awards or other recognition

36

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

12)     In the case of promotion with tenure, peer review letters from tenured law library faculty of higher rank. In the case of promotion without tenure, peer review letters from law library faculty of higher rank

13)     Any other material, such as a personal statement, that the faculty member wishes the Committee, the law library faculty, and the Dean to consider

4. Criteria for Promotion and Tenure

Areas of consideration for promotion in the Librarian Series include the librarian's assigned duties, as well as professional activities and general professional development)AR 2:7(IV)(A) and(B))

4A.  Participation in Faculty Governance

Law Library faculty may participate fully on issues of faculty governance and College of Law policy, including voting at faculty meetings, with the exception of decisions on appointment, retention, promotion, tenure, and termination of faculty in the regular or special title series. Procedures related to Law Library faculty appointment, retention, promotion, and tenure are set out separately at G.5-7 below.

[4A. Added by Faculty vote to amend on 9/17/16.]

5. Standards for Appointment, Reappointment, Promotion and Tenure

Law library faculty performance shall be evaluated by referencing the following standards:

a. Primary Librarianship Responsibilities

For law library faculty without administrative responsibilities, this means professional and intellectual competence. Law Library faculty with administrative responsibilities will also be evaluated for administrative competence. Competent performance of regular library duties is the principal component of this standard. Library duties include providing public and reference service; collection cataloguing; collection management; materials acquisition, maintenance, and processing; or other activities related to participation in the operation of the library. Specific duties vary by Law Library position, so individual Law Library faculty members will not be expected to engage in all the above to the same extent.

Evidence of excellence in library duties includes but is not limited to:

1)  Developing library resources through the selection and acquisition of library materials;
2)  Instruction of library users on effective use of library resources;
3)  Extending access to library resources through bibliographic control;
4)  Using bibliographic tools to assist users in information acquisition, use, or analysis;
5)  Organizing bibliographic information;
6)  Developing programs which facilitate the delivery or use of information or library services or resources;
7)  Extending access to library resources through technological devices or means; and
8)  Improving unit performance or effectiveness through initiative and creative problem-solving.

In addition to the library duties described above, all dual-degreed Law Library faculty shall teach Legal Research as part of the LRW program. Law Library faculty members will normally teach one or more sections of 1L legal research per year, with the exact teaching load to be determined by the Dean upon the recommendation of the LRW Director in consultation with the Instructional

37

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

Services Librarian and the Law Library Director. Law Library faculty members may also teach upper level research courses. Teaching ability and potential will be assessed as part of Law Library faculty primary librarianship.

In developing information regarding the teaching ability and potential of a Law Library faculty member, the following methods will be employed:

1) Periodic formal student evaluation normally occurring at the conclusion of a particular course. In 1L Legal research, formal student evaluation will also occur at the midpoint of the course at the end of the fall semester. It is normally expected that Law Library faculty members will be evaluated in every course.

2) Class visitation of non-tenured Law Library faculty by other Law Library faculty members or the Law Library Director. Normally, such visitations will not be scheduled during a non-tenured Law Library faculty member's first year teaching. Thereafter, visits shall be scheduled during each semester until a decision not to retain or to recommend tenure has been reached. Each visitation period shall include two visitors, though they need not visit the same class session. The LLFRPT committee will select the "visitors" from among the tenured Law Library faculty, and all Law Library faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. In the event that not enough appropriately senior Law Library faculty are available, the Law Library Director will serve as a visitor. In the event that not enough visitors are available amongst both the tenured Law Library faculty and the Law Library Director, the visited teacher may elect to either receive a sole visitor or to request a second visitor from amongst the tenured Law faculty.  Any Law Library faculty member whose class is to be visited shall have an opportunity to object to the choice of particular visitors and have the objection and reasons therefore considered by the committee in selecting visitors. The objection to the visitors and reasons therefore shall be noted in the faculty member's promotion and tenure file at his or her request. After the visitors have been selected they will consult with the teacher to be visited to reach an understanding concerning the time of visitation. Normally one class hour of one course will be observed.  The visitors will file individual written evaluations with their names thereon in the Dean's office for inclusion in the promotion and tenure file. The LLFRPT committee will make copies each evaluation without the name of the visitor available to the visited teacher upon request.

3) Class visitation of tenured but non-fully-promoted Law Library faculty by other Law Library faculty members or the Law Library director. Class visits will be scheduled once every academic year for tenured Law Library faculty members who have not been fully promoted. Each visitation period shall include two visitors, though they need not visit the same class session. The LLFRPT committee will select the course to be evaluated in consultation with the Law Library faculty member. The LLFRPT committee will select the "visitors" from among the fully-promoted Law Library faculty, and all Law Library faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. In the event that not enough appropriately senior Law Library faculty are available, the Law Library Director will serve as a visitor. In the event that not enough visitors are available amongst both the fully-promoted Law Library faculty and the Law Library Director, the visited teacher may elect to either receive a sole visitor or to request a second visitor from amongst the fully-promoted Law faculty.  Any Law Library faculty member whose class is to be visited shall have an opportunity to object to the choice of particular visitors and have the objection and reasons therefore considered by the committee in selecting visitors. The objection to the visitor and reasons therefore shall be noted in the faculty member's promotion and tenure file at his or her request. After the visitors have been selected they will consult with the teacher to be visited to reach an understanding concerning the time of visitation. Normally one class hour of one course

38

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

will be observed. The visitors will file individual written evaluations with their names thereon in the Dean's office for inclusion in the promotion and tenure file. The LLFRPT committee will make copies of each evaluation without the name of the visitor available to the visited teacher upon request.

[Subpart 5(a) amended November 30, 2017.]

b. Professional Growth and Development.

This means: awareness of current developments in the law library profession and appropriate subject fields; continuing scholarly growth as exemplified by research and publication; or active participation in improving the law library profession.

Evidence of excellence in the profession includes but is not limited to:

1) serving as an officer of a professional organization;
2) serving upon or chairing a committee of a professional organization;
3) receiving recognition or honors related to professional activities;
4) creating programming for a workshop or professional meeting or conference;
5) pursuing continuing education or professional development in information science or other relevant fields through course work, seminars, or workshops; and
6) participating in continuing education or professional development activities as a presenter or speaker.


Evidence of excellence in scholarly productivity includes but is not limited to:

1) publication in professional scholarly journals dedicated to the areas of information science, study or technology, law librarianship, librarianship, or legal education, theory, or practice;
2) publication in law reviews and other scholarly journals concerned with legal or policy issues.
3) contributions as an author, editor, or indexer in any format; and
4) preparation of substantial bibliographies, guides, or other resources designed to enhance access or widen use of library resources, or legal information resources, generally.


Additionally, the following are among the more important indicators of excellence in research activity in the area of information science, study or technologies, or law librarianship:

1) The work delineates the research area.
2) The work apprises the reader, when appropriate, of the current state of inquiry with respect to the research area.
3) The work demonstrates a mastery of knowledge considered relevant to the particular research area.
4) The work demonstrates a high level of analytical or bibliographic proficiency.
5) The work reveals a capacity to synthesize ideas and data from diverse sources and disciplines.
6) The work, if non-bibliographic, demonstrates the skillful use of analogy, factual and theoretical.
7) The work, if bibliographic, demonstrates that the author commands expertise and skill in employing and analyzing the research tools appropriate to the task.
8) The work reflects a well-developed critical capacity.
9) The work reflects ability to develop new models or make additions to previously developed models.

39

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

    10) The work reflects a capacity to be creative, imaginative, and original.

        c. Service

This means: excellence as judged by the effectiveness with which the service is performed, its relation to the general welfare of the University or community, or its effect on the development of the individual.

Evidence of excellence in performance in this area includes but is not limited to:

    1) participating in or assuming a leadership role in a library committees or working groups;
    2) participating in or assuming a leadership role in university governance, including a committee, an advisory board, a working group, a commission, or a task force;
    3) participating in or assuming a leadership role in a College- or university-sponsored community project;
    4) guest teaching or presenting in a classroom setting;
    5) pursuing continuing education or professional development in information science or other relevant fields through course work, seminars, or workshops; and
    6) participating in continuing education or professional development activities as a presenter or speaker.

    6. Structure and procedure of the Law Library Faculty Retention, Promotion and Tenure Committee (LLFRPT)

    a. The LLFRPT Committee consists of all tenure-track librarians in the Law Library, regardless of rank. The Committee will consider and discuss the qualifications of candidates for contract renewal, promotion, and tenure, or a combination of these. The Dean of the College of Law, in consultation with the Law Library Director, shall appoint a chair at the beginning of each academic year. The chair will ensure that required procedures are followed, and will conduct review meetings, except the chair's own review.

    b. The LLFRPT Committee must have at least four members of the tenured law library faculty present in order to vote on promotion or tenure decisions. If at least four members of the tenured law library faculty are not eligible or available to vote on a particular renewal, tenure or promotion matter, the Dean of the College of Law may appoint one or more tenured faculty members from the College of Law to participate in the tenure or promotion decision.

    [subparagraphs a-b as amended by the Faculty August 22, 2013]

    c. All reviews will be conducted at a meeting of the LLFRPT Committee and will be based on the criteria set forth in The University of Kentucky Guide to Policies and Procedures for Contract Renewal, Promotion, and Tenure of Academic Law Librarians. Each LLFRPT Committee meeting requires a two-thirds majority of its library's faculty to achieve a quorum. Librarians on sabbatical or approved university leave are not counted when determining quorum if they are not present at the meeting.

    d. The meeting of the LLFRPT Committee shall discuss evidence in the candidate's file as well as considerations presented by members of the committee. All law library faculty (with the exception of the candidate currently under consideration, and any member of that candidate's immediate family) along with the Director shall participate in review meetings.

    e. A report summarizing the committee's decision will be made to each librarian being considered within one week of any review meeting. The report may be made orally, at the discretion of the committee.

40

14. Procedures for Appointment, Reappointment, Tenure and Promotion
G. Provisions Governing Law Library Faculty (excluding the Director of the Law Library)

7. Voting

a. Except as otherwise provided, a vote can be taken by voice, by rising, by show of hands, or by unanimous consent. A vote by ballot can be ordered by a majority vote. In all cases, votes must be tallied and added to the Committee's report. Neither the Director, immediate family members of the candidate, nor the candidate may vote on the candidate's contract renewal, promotion, or tenure.

b. Voting is  restricted as described below:

Contract Renewal and Promotion: Tenured library faculty and untenured library faculty of higher rank than the candidate being reviewed are eligible to vote on recommendations for contract renewal and promotion,

Tenure:  Tenured library faculty of equal or higher rank than the candidate being considered are eligible to vote on recommendations of tenure.

Before a vote is taken, those members of the LLFRPT Committee not eligible to participate in the vote will be excused from the meeting.

c. Votes will be counted and recommendations made according to the majority vote.

d. The chair shall appoint a reporter for the proceeding who shall prepare a report. The report shall be reviewed by all members of the LLFRPT Committee before the final version is approved by the Chair.

8. Procedure of the Law Library Director

The candidate's file and the report of the LLFRPT Committee shall be submitted to the Law Library Director.  The Director shall thereafter make an independent assessment of the librarian being reviewed, and submit a recommendation separate from the report of the Committee to the Dean of the College of Law.

9. Procedure of the Dean of the College of Law

a. The report of the Committee and the recommendation of the Director shall be forwarded, along with the file, to the Dean of the College of Law.

b. The Dean of the College of Law shall make an independent determination and prepare an evaluative letter and recommendation on the granting of tenure and/or promotion. The Dean may refer the file back to the Committee for further proceedings.

c. The Dean shall forward the Committee's report and the candidate's file, along with his or her evaluative letter, to the Provost.

14. Procedures for Appointment, Reappointment, Tenure and Promotion
H. Provisions Governing the Position of the Director of the Legal Research & Writing Program

## H. Provisions Governing the Position of the Director of the Legal Research & Writing Program

**[NOTE: This Rule 14H applies only to appointments or reappointments made prior to July 1, 2024.]**

1. Program Appointment in Clinical Title Series

The Director shall be appointed in the "clinical title series" under the University of Kentucky's Administrative Regulations (AR 2:6). All appointments and promotions under the clinical title series are without tenure.

2. Criteria for Appointment, Retention, Promotion, and Performance Evaluation

Three areas of activity are important in the evaluation of individuals for initial appointment to the position of Director, and in retention, promotion, and annual performance reviews of the Director. These areas of activity are: (1) administration and teaching relative to the College of Law's LR&W program, including recommendations to the faculty of curricular design and staffing for the College of Law's LR&W Program and oversight and implementation of the approved curriculum design and staffing model, which area of activity shall constitute the majority of the Director's responsibilities; (2) professional status and activity; and (3) College of Law, University, and public service. The criteria for evaluation of performance in these areas of activity include:

a. Administration and teaching: Demonstrated ability and competence in the administration of the LR&W Program, in teaching of one or more Legal Writing sections (as determined by the Dean) and related courses, recommending to the faculty curricular design and staffing for the LR&W Program and oversight and implementation of the approved curriculum design and staffing model, and regular supervision and performance review of LR&W faculty and staff (including support staff) as directed by the Dean.

b. Professional status and activity: Demonstrated interest and achievement in participating in and attaining recognition outside of the University for law-related activities involving legal educational organizations and bar, professional, civic and other associations, including participation in continuing legal education programs and speaking and writing on topics related to legal research and writing.

c. College of Law, University, and public service: Demonstrated interest and achievement in service to the College of Law, University, and the public. Such service includes participation in faculty activities and meetings, committee work, and other activities related to the operation of the College of Law, in University committee work as assigned, and in law reform and other law-related activities on behalf of the public interest.

3. Procedures for Evaluation of Performance

As a non-tenured faculty member, the Director shall be evaluated annually in writing by the Dean using the Faculty Performance Information Form and Distribution of Effort Form and applying the criteria provided in Paragraph II.

4. Ranks and Their Criteria Within the Clinical Title Series

The academic ranks applicable to the Director shall be: (1) assistant professor of legal research and writing; (2) associate professor of legal research and writing; and (3) professor of legal research and writing. The criteria for these ranks are as follows:

42

14. Procedures for Appointment, Reappointment, Tenure and Promotion
H. Provisions Governing the Position of the Director of the Legal Research & Writing Program

a. Assistant Professor of Legal Research and Writing:  Initial appointment to the position of Director shall generally be made at the rank of assistant professor of legal research and writing and require at a minimum a degree in law, some practice experience in the range of legal problems, proven administrative abilities and experience, and potential for productivity, service, and professional growth.

b. Associate Professor of Legal Research and Writing: Appointment to the rank of associate professor of legal research and writing shall be made upon demonstration that the individual under consideration, in addition to possessing the minimum requirements for initial appointment at the rank of assistant professor of legal research and writing, has shown continuous productivity and achievement in the areas of activity of the Director sufficient to have attained regional recognition for excellence.

c. Professor of Legal Research and Writing: Appointment to the rank of professor of legal research and writing shall be made upon the demonstration that the individual under consideration, in addition to possessing the minimum requirements for appointment as associate professor of legal research and writing, has shown continuous outstanding productivity and achievement in the areas of activity of the Director sufficient to have attained national recognition for excellence.

The Director will be evaluated by the RPT committee in the same manner as regular LR&W faculty as described in 14.I.4.

5. Limitation

Appointment, retention, and promotion within the clinical title series create no entitlement to any claim to or justifiable expectation regarding temporary or permanent appointment to the Faculty of the College of Law in the regular or special title series.

6. Participation in Faculty Governance

The Director may participate fully on issues of faculty governance and College of Law policy, including voting at faculty meetings, with the exception of decisions on appointment, retention, promotion, tenure, and termination of faculty in the regular or special title series.

7. Non-Compensatory Perquisites

The Director shall be provided the same non-compensatory perquisites as provided for tenure-track faculty, including administrative assistance, support for professional activities, library and technology support, and travel funds, but not including sabbatical leaves.

8. Period of Appointment

Appointment of the Director shall be on a twelve-month basis.

9. Term of the Contract

The initial appointment of the Director shall be for a term not to exceed three years, which shall serve as a probationary period. The appointment may thereafter be renewed for one or more additional terms each not to exceed five years.

10. Termination of Employment

43

14. Procedures for Appointment, Reappointment, Tenure and Promotion
H. Provisions Governing the Position of the Director of the Legal Research & Writing Program

After the initial appointment, the employment of the Director shall be terminable during the term of an appointment only for good cause.  Good cause for termination includes the discontinuation or material modification of the Legal Research & Writing Program. Notice of termination of employment at the end of a term of appointment, other than for good cause, shall be given to the Director at least one year prior to that termination.

### 11. Modification

The provisions contained in this document shall only be subject to modification by the Dean upon recommendation of the Faculty of the College of Law.

## I.  Provisions Governing the Position of Legal Research & Writing Faculty

**[NOTE: This Rule 14I applies only to appointments or reappointments made prior to July 1, 2024.]**

### 1. Appointment in Clinical Title Series

Each full-time faculty member of the College of Law who regularly teaches a section of the Legal Research & Writing (LR&W) course and who is not appointed in the "library title series" shall be appointed in the "clinical title series" under the University of Kentucky's Administrative Regulations (AR 2:6). All appointments and promotions under the clinical title series are without tenure.

### 2. Criteria for Appointment, Retention, Promotion, and Performance Evaluation

Three areas of activity are important in the evaluation of individuals for initial appointment to the position of LR&W faculty, and in retention, promotion, and performance reviews of LR&W faculty. These areas of activity are: (a) teaching and programmatic contributions relative to the College of Law's LR&W Program, which area of activity shall constitute the primary criteria in evaluating LR&W faculty; (b) professional status and activity; and (c) College of Law, University, and public service. The criteria for evaluation in these areas of activity, as well as the work effort distribution model, are set forth below, provided, however, that an individual appointed to the position of LR&W faculty may engage in other regular administrative and skills-based teaching duties on behalf of the College of Law that are assigned and evaluated by the Dean separate and apart from the activities described herein.

a. Teaching and programmatic contributions: These primary criteria for evaluation include the LR&W faculty member's demonstrated ability in and potential for excellence in teaching one or more Legal Writing sections (as determined by the Dean) and related courses, and contributions to the College of Law's LR&W Program. Evaluation of teaching includes consideration of classroom instruction, development of course materials and writing problems, evaluation of student work, and conducting of student conferences. Evaluation of programmatic contributions includes contributions to and compliance with LR&W Program development, objectives, and administration.

b. Professional status and activity: Demonstrated interest and achievement in participating in and attaining recognition outside of the University for law-related activities involving legal educational organizations and bar, professional, civic and other associations, including participation in conferences and continuing legal education programs and speaking and writing on topics related to legal research and writing.

c. College of Law, University, and public service: Demonstrated interest and achievement in service to the College of Law, University, and the public. Such service includes participation in faculty activities and meetings, committee work, and other activities related to the

44

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

operation of the College of Law, in University committee work as assigned, and in law reform and other law-related activities on behalf of the public interest.

d. Work Effort Distribution Model

This model is applicable to LR&W faculty (excluding the Director of the LR&W Program). Percentage ranges are intended as guidelines for the amount of time to be devoted to the various areas of activity. For purposes of performance evaluations, each LR&W faculty member may designate the weighting factor to be used in evaluating performance in the following categories, which are discussed in more detail in (a)-(c) above:

Teaching and programmatic contributions (Minimum 65% - Maximum 80%)

Professional status and activity (Minimum 15% - Maximum 35%)

College of Law, University, and public service (Minimum 5% - Maximum 25%)

Other values for a LR&W faculty member for whom the above model is unrealistic due to extraordinary circumstances or because the faculty member also engages in other regular administrative and/or skills-based teaching duties on behalf of the College of Law must be determined by agreement with the Dean. Similarly, a LR&W faculty member who finds his/her actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of his/her work effort distribution by agreement with the Dean.


DISTRIBUTION OF EFFORT FORM – LR&W FACULTY


_____
(Name)

In accordance with the College of Law faculty rules, I would like my performance in each of the following areas to be weighted as indicated for my merit evaluation for calendar year _____.


a. Teaching and programmatic contributions (Min. 65% - Max. 80%)          _____

b. Professional status and activity (Min. 15% - Max. 35%)          _____

c. College of Law, University, and public service (Min. 5% - Max. 25%)  _____

Other values for a LR&W faculty member for whom the above model is unrealistic due to extraordinary circumstances or because the faculty member also engages in other regular administrative and/or skills-based teaching duties on behalf of the College of Law must be determined by agreement with the Dean. Similarly, a LR&W faculty member who finds his/her actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of his/her work effort distribution by agreement with the Dean.


_____
Signature – Faculty Member

45

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

_____
Signature – Director of LR&W Program

_____
Signature – Dean

3. Procedures for Annual Performance Evaluation

As a non-tenured faculty member, an LR&W faculty member shall be evaluated annually in writing by the Dean using a Faculty Performance Information Form and Distribution of Effort Form and applying the criteria provided in paragraph 2. In conducting an annual evaluation, the Dean may consult the Director of the LR&W Program.

4. Procedures for Appointment, Retention & Reappointment, and Promotion

a. Initial Appointment. A candidate for initial appointment as a LR&W faculty member under this provision must demonstrate the potential for excellence as a teacher of legal research and writing, as shown by educational achievement, prior practice of law, prior teaching, or other relevant achievements and skills and according to the criteria set forth below in paragraph 5 for the appropriate rank at time of hire. The Appointments Committee shall search for and screen candidates for initial appointment as LR&W faculty under this provision and shall make recommendations concerning such appointments to the Regular and Clinical Title Series faculty. On matters pertaining to the hiring of a LR&W faculty member, the Director of the LR&W Program and/or another LR&W faculty member (as determined by the Dean) shall serve as a member of the Appointments Committee. A LR&W faculty member shall be initially appointed by the Dean only after the Regular and Clinical Title Series faculty have been consulted and collectively made a recommendation to the Dean.

b. Evaluations for Retention & Reappointment. A LR&W faculty member shall be subject to evaluation by the RPT Committee during the year preceding the end of any term of appointment. This evaluation should be in writing and should be based on information provided in the LR&W faculty member's portfolio (which should be updated annually by the faculty member in cooperation with the Dean), including all Faculty Performance Information Forms, Distribution of Effort Forms, evaluations (if any) by the Director of the LR&W Program, and such other information as is deemed relevant by the Dean, the RPT Committee, and/or the Director of the LR&W Program for evaluating the criteria provided in paragraph 2 above, including classroom visits by faculty members. On matters relating to the review of a LR&W faculty member's performance for purposes of retention and reappointment, the Director of the LR&W Program shall serve as an ex officio member, without voting rights, of the RPT Committee, providing a written report to the committee that sets forth guidance on ways to effectively evaluate ability in and potential for excellence in teaching legal research and writing and that advises on the LR&W faculty member's performance in regards to the criteria set forth in paragraph 2(a) and 2(b). Upon request by the RPT Committee or Dean, the Director's report shall also include an evaluation of the LR&W faculty member's performance in regards to the criteria set forth in paragraph 2(c) or in regards to any other pertinent information.

The RPT Committee shall review all relevant materials presented in connection with the evaluation and then provide a report or recommendation to the Regular and Clinical Title Series faculty together regarding reappointment, provided that each Clinical Title Series Faculty member shall be teaching

46

14. Procedures for Appointment, Reappointment, Tenure and Promotion
l.  Provisions Governing Faculty in the Clinical Title Series

pursuant to a five-year contract. After the report or recommendation has been made to the Regular and Clinical Title Series faculty together and a decision has been reached, the Dean shall advise the LR&W faculty member of his or her status for reappointment.

c. Evaluations for Promotion. A LR&W faculty member shall be subject to evaluation by the RPT Committee during any year in which that LR&W faculty member requests promotion. The LR&W faculty member may consult with the Dean and the RPT Committee regarding the decision to seek promotion and the timing of that decision. These evaluations should be in writing and should be based on information provided in the LR&W faculty member's portfolio (which should be updated annually by the faculty member in cooperation with the Dean), including all Faculty Performance Information Forms, Distribution of Effort Forms, report(s) (if any) by the Director of the LR&W Program to the RPT Committee and such other information as is deemed relevant by the Dean, the RPT Committee, and/or the Director of the LR&W Program for evaluating the criteria provided in paragraphs 2 and 5, including classroom visits by faculty members. On matters relating to the review of a LR&W faculty member's performance for purposes of promotion, at least one LR&W faculty member who holds a rank equivalent to or higher than the rank for which the individual is being considered shall serve as a member of the RPT Committee. If there is no such other LR&W faculty member at the time of the review and the composition of the faculty makes Committee service possible, at least one Clinical Title Series faculty member (which could include the Director of the LR&W Program) who holds a rank equivalent to or higher than the rank for which the LR&W faculty member is being considered shall serve as a member of the RPT Committee for matters relating to the review of the LR&W faculty member's performance for purposes of promotion.

The members of the faculty who shall be consulted and who collectively shall make a recommendation to the Dean concerning promotion of an LR&W faculty member will be those members of the Regular and Clinical Title Series faculty holding a rank equivalent to or higher than the rank for which the individual is being considered (e.g., only Regular and Clinical Title faculty holding a rank of Associate Professor or Professor will vote on promotion of an Assistant Professor to Associate Professor in the Clinical Title series). The RPT Committee will review all materials relevant to the evaluation for promotion and then provide a recommendation to the Regular and Clinical Title Series faculty regarding promotion. After the recommendation has been made to the Regular and Clinical Title Series faculty and a decision has been reached, the Dean shall advise the LR&W faculty member of his or her status for promotion.

d.  Class visitation

The RPT Committee will be responsible for coordinating class visits of LR&W faculty who have not been fully promoted.  Normally, no visits will occur during a LR&W faculty member's first and second semesters of teaching.  Thereafter, visits shall be scheduled each semester until a decision has been reached not to retain the faculty member or to promote the faculty member to Associate Professor.  Two visitors will visit one course for two class sessions each semester until the faculty member has been promoted to Associate Professor.  Once a LR&W faculty member has been promoted to Associate Professor, visits will occur once a year until a decision has been reached to fully promote the LR&W faculty member.  Two visitors will visit one course for one class session once each academic year in the case of a LR&W faculty member who has been promoted to Associate Professor.  The committee will select "visitors" from among the fully-promoted tenured and fully-promoted LR&W faculty, and all such faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. Any faculty member whose class is to be visited shall have an opportunity to object to the choice of a particular visitor and have the objection and reasons therefore considered by the committee in selecting visitors. The objection to the visitor and reasons therefore shall be noted in the faculty member's promotion file at his or her request. After the visitor has been selected the visitor will consult with the teacher to be visited to obtain course assignments and to reach an

47

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

understanding concerning the times of visitation. The visitor will file an individual written evaluation with his or her name thereon in the Dean's office for inclusion in the promotion file.  The committee will make copies of the evaluations without the name of the visitor available to the visited teacher upon request.

5. Ranks and Their Criteria Within the Clinical Title Series

The academic ranks applicable to a LR&W faculty member shall be: (a) assistant professor of legal research and writing; (b) associate professor of legal research and writing; and (c) professor of legal research and writing. The criteria for these ranks are as follows:

a. Assistant Professor of Legal Research and Writing: Initial appointment to the position of LR&W faculty member shall generally be made at the rank of assistant professor of legal research and writing and require at a minimum a degree in law, some practice experience in the range of legal problems, potential for excellence in teaching, commitment to teaching legal writing and making contributions to the College of Law's LR&W Program, and potential for productivity, service, and professional growth.

b. Associate Professor of Legal Research and Writing: Appointment to the rank of associate professor of legal research and writing shall be made upon demonstration that the individual under consideration, in addition to possessing the minimum requirements for initial appointment at the rank of assistant professor of legal research and writing, has shown continuous productivity and achievement in the areas of teaching, professional development, and service sufficient to have attained regional recognition for excellence.

c. Professor of Legal Research and Writing: Appointment to the rank of professor of legal research and writing shall be made upon demonstration that the individual under consideration, in addition to possessing the minimum requirements for appointment as associate professor of legal research and writing, has shown continuous outstanding productivity and achievement in the areas of teaching, professional development, and service sufficient to have attained national recognition for excellence.

6. Limitation

Appointment, retention, and promotion within the clinical title series create no entitlement to any claim to or justifiable expectation regarding temporary or permanent appointment to the Faculty of the College of Law in the regular or special title series.

7. Participation in Faculty Governance

A LR&W faculty member may participate fully on issues of faculty governance and College of Law policy, including voting at faculty meetings. Such participation will be in accordance with these provisions governing the position of LR&W faculty. LR&W faculty will not, however, participate in decisions on appointment, retention, promotion, tenure, and termination of faculty in the Regular or Special title series.

8. Non-Compensatory Perquisites

A LR&W faculty member shall be provided the same non-compensatory perquisites as provided for tenure-track faculty, including administrative assistance, support for professional activities, library and technology support, and travel funds, but not including sabbatical leaves.

9. Period of Appointment

48

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I. Provisions Governing Faculty in the Clinical Title Series

Appointment of a LR&W faculty member shall be on a nine-month basis.

10. Term of the Contract

The initial appointment of a LR&W faculty member shall be for a term not to exceed three years, which shall serve as a probationary period. The appointment may thereafter be renewed for one or more additional terms each not to exceed five years.

11. Termination of Employment

After the initial appointment, the employment of the LR&W faculty member shall be terminable during the term of an appointment only for good cause. Good cause for termination includes the discontinuation or material modification of the College of Law's LR&W Program.

Notice that an initial appointment or subsequent reappointment is not to be renewed by the College of Law will be given in advance of the expiration of the current term and not later than January 15 of the terminal year of the contract at issue.

12. Modification

The provisions contained in this document shall be subject to modification only by the Dean upon recommendation of the Faculty of the College of Law.


## J. Appointment, Renewal, and Promotion in the Clinical Title Series

[NOTE: This Rule 14.J. applies to all appointments and reappointments in the Clinical Title Series made after July 1, 2024, and thereby replaces Rules 14.E., 14.H., and 14.I.

1. Appointment in Clinical Title Series

The College may appoint clinical faculty under the Clinical Title Series according to the provisions of the University of Kentucky's Administrative Regulation 2:6. All appointments and promotions in this series are without tenure. Within the College of Law, clinical faculty will be appointed in specific areas as indicated below.

This rule shall be used for all Clinical Title Series appointments, renewals, and promotions after April 17, 2024.

2. Criteria for Appointment, Renewal, Promotion, and Performance Evaluation

(a) Teaching and programmatic contributions relative to the program with which the faculty member is or will be associated. This activity shall constitute the primary activity for evaluation. Criteria for evaluation may include:

(1) for faculty in the College's Legal Clinics area: Demonstrated ability and competence in clinical instruction and in providing high quality legal representation to clients of the Legal Clinic with which the faculty member is associated.

(2) for faculty in the College's Legal Research and Writing area: teaching and programmatic contributions relative to the College of Law's Legal Research and Writing (LR&W)

49

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

Program. Evaluation of teaching includes consideration of classroom instruction, development of course materials and writing problems, evaluation of student work, and conducting of student conferences. Evaluation of programmatic contributions includes contributions to and compliance with LR&W Program development, objectives, and administration.

(3) for faculty in the College's Academic Enhancement area: teaching and programmatic contributions relative to the College of Law's academic orientation, retention, counseling, and bar preparation programs.

(4) Other program areas may be established by amendment to this rule only by the Dean upon recommendation of the faculty, which includes for this purpose Regular, Librarian, and Clinical Title Series faculty members.

(b) Professional status and activity. Criteria for evaluation may include: demonstrated interest and achievement in participating in and attaining recognition outside the University for law-related activities involving legal educational organizations and bar; professional, civic and other associations, including participation in continuing legal education programs; and speaking and writing on topics related to the faculty member's area of appointment.

(c) College of Law, University, and public service. Criteria for evaluation may include: demonstrated interest and achievement in service to the College of Law, University, and the public. Such service includes participation in faculty activities and meetings, committee work, and other activities related to the operation of the College of Law, and in law reform and other law-related activities on behalf of the public interest. University service may not be required of any clinical faculty member, but any clinical faculty member may occasionally include such service if they so choose and the Dean concurs.

(d) Faculty may engage in other regular administrative and programmatic duties on behalf of the College of Law that are assigned and evaluated by the Dean apart from the activities described above.

(e) Work Effort Distribution Model

Percentage ranges are intended as guidelines for time to be devoted to the various areas of activity. For purposes of performance evaluations, each Clinical faculty member may designate, in an annual written agreement with the Dean, the weighting factor to be used in evaluating performance in the following categories, which are discussed in more detail in (a)-(d) above:

- Teaching and programmatic contributions (Minimum 60% - Maximum 80%)
- Professional status and activity (Minimum 15% - Maximum 35%)
- College of Law and public service (Minimum 5% - Maximum 25%)
- Other administrative and programmatic duties (determined by agreement with the Dean, with proportionate adjustment to the percentages in the other categories).

50

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

A faculty member who finds his/her actual distribution of effort during a calendar year to vary significantly from that submitted may seek amendment of his/her work effort distribution by agreement with the Dean.

### 3. Procedures for Evaluation of Performance

Each clinical faculty member shall be evaluated annually in writing by the Dean using the Faculty Performance Information Form and Distribution of Effort Form and applying the criteria provided in Paragraph 2 of this rule. In conducting an annual evaluation, the Dean may consult the Director (if any) of the faculty member's program area.

### 4. Procedures for Appointment, Renewal, and Promotion

(a) Initial appointment.

A candidate for initial appointment as clinical faculty member must demonstrate the potential for excellence by educational achievement, prior practice of law, prior teaching, or other relevant achievements and skills and according to the criteria set forth below in paragraph 5 for the appropriate rank at time of hire. An *ad hoc* search committee appointed for this purpose shall search for and screen candidates for initial appointment and shall make recommendations to the Regular and Clinical Title Series faculty. The Director of the appropriate program area (if any) shall serve as a member of this committee. A clinical faculty member shall be initially appointed by the Dean only after the Regular and Clinical Title Series faculty have been consulted and collectively made a recommendation to the Dean.

(b) Evaluations for Renewal.

(1) A clinical faculty member shall be subject to evaluation by the RPT Committee during the next-to-last academic year of the appointment. This evaluation should be in writing and should be based on information provided in the faculty member's portfolio (which should be updated annually by the faculty member in cooperation with the Dean), including all Faculty Performance Information Forms, Distribution of Effort Forms, evaluations (if any) by the Director of the appropriate program area, and such other information as is deemed relevant by the Dean, the RPT Committee, and/or the Director of the appropriate program area, for evaluating the criteria provided in paragraph 2 above, including classroom visits by faculty members.

(2) On matters relating to the review of a clinical faculty member's performance for purposes of renewal, the Director of the appropriate program area (if any) shall serve as a member, without voting rights, of the RPT Committee (unless the evaluation is of the Director). The Director shall provide a written report to the committee that sets forth guidance on ways to effectively evaluate ability and potential for excellence in regards to the criteria set forth in paragraphs 2(a) and 2(b) above, and that advises on the clinical faculty member's performance in regards to those criteria. Upon request by the RPT Committee or Dean, the Director's report shall also include an evaluation of the faculty member's performance in regard to the criteria set forth in paragraph 2(c) or in regard to any other pertinent information.

(3) The RPT Committee shall review all relevant materials presented in connection with the evaluation and then provide a report and recommendation to the Regular and Clinical Title

51

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

Series faculty together regarding renewal. After the report or recommendation has been made to the Regular and Clinical Title Series faculty together and a decision has been reached, the Dean shall advise the faculty member of his or her status for renewal.

     (c) Evaluations for Promotion.

        (1) The RPT Committee shall prepare a report by the end of each academic year on each clinical faculty member's progress toward promotion.  The RPT report should be in writing and should be based on information provided in the faculty member's portfolio (which should be updated annually by the faculty member in cooperation with the Dean), including all Faculty Performance Information Forms, Distribution of Effort Forms, report(s) (if any) by the Director of the appropriate program area (if any) to the RPT Committee and such other information as is deemed relevant by the Dean, the RPT Committee, and/or the Director of the appropriate program area (if any) for evaluating the criteria provided in paragraph 2, including classroom visits by faculty members as provided in part (d) below. At least one clinical faculty member who holds a rank equivalent to or higher than the rank for which the individual is being considered shall serve as a member of the RPT Committee that prepares the report. The clinical faculty member should, if possible, be from the same program area as the faculty member seeking promotion.  Based on the RPT report, the Dean in consultation with the faculty shall decide whether the clinical faculty member should be considered for promotion during the next academic year.

        (2) If the Dean and the clinical faculty member decide to proceed with the promotion process, the RPT Committee will solicit the necessary outside review letter, review all materials relevant to the evaluation for promotion and then provide a recommendation to the Regular and Clinical Title Series faculty regarding promotion. The members of the faculty who shall be consulted and who collectively shall make a recommendation to the Dean concerning promotion of a clinical faculty member will be those members of the Regular and Clinical Title Series faculty holding a rank equivalent to or higher than the rank for which the individual is being considered. For example, only Regular and Clinical Title faculty holding a rank of Associate Professor or Professor will vote on promotion of an Assistant Professor to Associate Professor in the Clinical Title series. After the recommendation has been made by the Regular and Clinical Title Series faculty and a decision has been reached, the Dean will make a final decision about recommending promotion and shall advise the faculty member of the recommendation.

        (d) Class visitation. The RPT Committee will be responsible for coordinating class visits of clinical faculty who have not been fully promoted.  Normally, no visits will occur during a faculty member's first and second semesters of teaching.  Thereafter, two visitors will visit one course for two class sessions each semester until the faculty member has been promoted to Associate Professor.  Thereafter, two visitors will visit one course for one class session once each academic year until the faculty member has been promoted to Professor. The committee will select class visitors from among faculty in any title series holding a rank higher than the rank of the individual whose class is being reviewed, and all such faculty members have an obligation to make reasonable efforts to serve as a visitor when called upon. Any faculty member whose class is to be visited shall have an opportunity to object to the choice of a particular visitor and have the objection and reasons therefore considered by the committee in selecting visitors. The objection to the visitor and reasons

52

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I. Provisions Governing Faculty in the Clinical Title Series

therefore shall be noted in the faculty member's promotion file at his or her request. After the visitor has been selected, the visitor will consult with the teacher to be visited to obtain course assignments and to reach an understanding concerning the times of visitation. The visitor will file an individual written evaluation with his or her name thereon with the Chair of the RPT Committee. The report shall be included  in the promotion file.  The visitor may provide a copy of the evaluation to the clinical faculty member.   The committee will make copies of the evaluations without the name of the visitor available to the visited teacher upon request.

**5. Ranks and Their Criteria Within the Clinical Title Series**

The academic ranks in the Clinical Title Series shall be: Assistant Clinical Professor, Associate Clinical Professor, and Clinical Professor. The criteria for these ranks are as follows.

(a) Assistant Clinical Professor. Initial appointment shall generally be made at this rank. Minimum requirements shall be a *Juris Doctor* or equivalent degree, some practice experience in the program area, and potential for productivity, service, and professional growth.

(b) Associate Clinical Professor. Appointment to this rank shall be made upon demonstration of the minimum requirements for initial appointment at the rank of Assistant Clinical Professor, plus continuous productivity, achievement, and creative contributions in the faculty member's program area sufficient to have attained regional recognition for excellence.

(c) Clinical Professor. Appointment to this rank shall be made upon demonstration of the minimum requirements for appointment as Associate Clinical Professor, plus continuous outstanding productivity and achievement in the faculty member's program area sufficient to have attained national recognition for excellence.

**6. Limitation**

Appointment, renewal, and promotion within the clinical title series create no entitlement to any claim to or justifiable expectation regarding temporary or permanent appointment to the Faculty of the College of Law in the Regular or Special title series.

**7. Participation in Faculty Governance**

Clinical faculty members may participate fully on issues of faculty governance and College of Law policy, including voting at faculty meetings, except for decisions on appointment, retention, promotion, tenure, or termination of faculty in the Regular or Special title series.

**8. Non-Compensatory Perquisites**

Clinical faculty shall be provided the same non-compensatory perquisites as provided for tenure-eligible faculty, including administrative assistance, support for professional activities including summer research grants, library and technology support, and travel funds, but not including sabbatical leaves.

**9. Period of Appointment**

Clinical faculty shall be appointed on a nine-month basis.

53

14. Procedures for Appointment, Reappointment, Tenure and Promotion
I.  Provisions Governing Faculty in the Clinical Title Series

### 10. Term of the Contract

The initial appointment of a Clinical faculty member shall be for a term not to exceed three years, which shall serve as a probationary period. The contract may thereafter be renewed for additional terms each not to exceed five years.

### 11. Termination of Employment

After initial appointment, the employment of a Clinical faculty member shall be terminable during the term of an appointment only for good cause. Good cause for termination includes the discontinuation or material modification of the faculty member's program area. Notice that a contract will not be renewed will be given during the next-to-last academic year of the appointment.

### 12. Modification

This rule may be modified only by the Dean upon recommendation of the faculty, which includes for this purpose Regular, Librarian, and Clinical Title Series faculty members.

## 15.  Kentucky Law Journal

Many recent changes to Journal policy resulted from recommendations made by the Journal Committee, which issued a report on April 19, 1989. The Journal Committee was comprised of several faculty members and the then current Editor-in-Chief to look for ways of improving the Journal's operations.

### A. Eligibility for membership

The Journal accepts members through a writing competition open to all students who have completed their first year of full-time study at the University of Kentucky College of Law and to students who transfer to the University of Kentucky College of Law after completing their first year at another school.

The Editorial Board shall issue membership invitations to those students who complete their first year of full-time study at the University of Kentucky College of Law in the top ten percent of their class and whose writing competition submission evidences a good faith effort pursuant to standards set by the Board.  In addition, the Editorial Board shall issue membership invitations to those students who submit writing exercises that meet the standards of Journal membership.

The Editorial Board may offer an alternate Writing Competition to accommodate students on a non-traditional law school schedule.

A student offered membership on the Journal may request deferral for one year upon written application to the Editor-in-Chief.  The Editor-in-Chief may grant the request if the student will spend the ensuing year out of the College of Law or for other extraordinary reasons.

### B. Loss of journal membership

54

15. Kentucky Law Journal

1. A student may lose Journal membership for the following reasons:

    a. Failure to perform administrative duties adequately.

    b. Failure to meet writing or editorial requirements.

    c. Failure to remain in the top one-third (1/3) of the class if the student graded-on and has not written a publishable Note.

2. Removal

    a. Editor-in-Chief exercises discretion as to the initiation of removal procedures.

    b. Editor-in-Chief makes a recommendation to the Faculty Advisor.

    c. A joint decision of the Editor-in-Chief and the Faculty Advisor is final.

    d. The Faculty Advisor and Dean have authority to remove an editor that is not fulfilling his duties.

Previously, removal from the Journal required a recommendation by the Editor-in-Chief to the Faculty Advisor, agreement as to removal and the convening of a faculty committee to consider the matter. In 1989 the Journal Committee found this process cumbersome and recommended an expedited approach.

**C. Duties of membership**

1. Writing

Each second-year staff member is required to write a Note. Each Note must reach the "publishable" standard.

Prior to the Journal Committee's report in 1989, second-year staff members would write a Note, while third-year staff members would prepare a Comment. The committee recommended that staff members be required to write only one piece in their second year. The purpose for the recommendation was to encourage staff members to produce papers of publishable quality during their second year. In the third year, staff members are assigned as Associate Editors for the second-year Notes.

2. Editing

All staff members are expected to do source & cite edits for the Journal. Third-year staff members edit Notes written by second-year staff members.

3. Administrative work

Each staff member must schedule two 2 1/2 hour time blocks per week to be available for administrative work. Members are subject to further administrative assignments as needed during the summer, vacations, weekends and nights. Each staff member will be responsible for as many as seventy-five hours of administrative work per semester.

**D. Academic credit**

15. Kentucky Law Journal

All Journal staff members receive three (3) hours of pass/fail credit upon the successful completion of Journal duties.  Journal members may apply for academic credit during the last semester of study at the University.

The 1989 committee report recommended the change from awarding letter grades to Journal members to a pass/fail system.  The committee reported that letter grades are not necessary for effective evaluation of staff member work.  Instead, feedback from editors concerning the quality of work was viewed as likely to induce more efforts from staff members than grades.

### E. Editorial Board

#### 1. General

The Editorial Board is responsible for planning and directing all Journal operations for one year and for publishing one volume of the Journal, comprised of four issues.  All editors are expected to work full-time for at least one week at the beginning of the summer and to contribute substantial amounts of time throughout the summer. The Editor-in-Chief and Managing Editor are required to work substantially full-time for one-half of the summer or half-time for the full summer. Outside employment is allowed for the Editorial Board during the summer but not during the school year.  Each editor receives a stipend of $800 for the year of editorship.

The 1989 committee report recommends that the $800 per year stipend to the Editorial Board be raised to a full-tuition scholarship.  In that regard, the Kentucky Law Journal Alumni Association was established to solicit funds for this and other Journal matters privately. The Law School currently provides funds for the $800 stipends.

> **Commented [JB5]:** Update this with the accurate information, or delete it?

#### 2. Selection of Editorial Board

The Editorial Board is selected in the spring term by the preceding Board with the consent of the faculty on the basis of the following factors:

> a. total Journal performance.
>
> b. interest and willingness to make sacrifices for the Journal.
>
> c. demonstrated editing and writing abilities.
>
> d. law school grades.
>
> e. suitability for particular Board responsibilities.

To assist in the selection of a new Editorial Board, the new Editor-in-Chief is selected shortly after the spring semester begins. The new Editor-in-Chief has one (1) vote on any ballot taken by the preceding Board in selecting the balance of the new Board

## 16. Kentucky Journal of Equine, Agriculture & Natural Resources Law

[On March 26, 2009, the Faculty approved the change to the current name from "The Journal of Natural Resources and Environmental Law." The title of the journal and the abbreviations used herein have been changed to conform.]

16. Kentucky Journal of Equine, Agriculture & Natural Resources Law

A. The Mineral Law Center, University of Kentucky, College of Law sponsored periodical dealing with mineral law is established and is entitled "The Kentucky Journal of Equine, Agriculture & Natural Resources Law " (hereinafter referred to as KJEANRL).

B. The KJEANRL would be organized along similar lines as the Kentucky Law Journal and would demand similar high quality for publication.

C. The KJEANRL staff will consist of an Editor-in-Chief, an Executive Editor, a Managing Editor, an Articles and Notes Editor, and a Comments Editor, with total student staff of up to 20 students. Five of the students will be designated to serve as support staff for the "Kentucky Mineral Law Handbook" and the remaining fifteen students will perform staff duties for the KJEANRL.  In the start-up phase the Editor-in-Chief will use discretion and select students only when it appears there is a need and opportunity to do meaningful activities.

D. The Editor-in-Chief/ KJEANRL Faculty Advisor will be the Director of the Mineral Law Center in order to provide faculty support and direction.  The other four editorial positions would be student positions.

E. A statement of editorial policy will be written before the Journal begins publication.

F. The staffing of the Journal would be left "flexible" so that the Editor-in-Chief and the Mineral Law Advisory Committee could start with a smaller staff than allowed by the proposal and then enlarge it as the workload of the Journal increased.

G. The timing of the "write on" competition should parallel that of the Kentucky Law Journal.

H. The Journal ultimately would be refereed by an Editorial Advisory Board consisting of a panel of experts from both inside and outside academia.

I. The mix of articles for the Journal generally would follow that of the KLJ.

J. The editorial staff should consist of: a) students from the top 25% of the class invited to join on the basis of their grades, and b) candidates who submit a "Publishable" comment.  There should be two write-on programs, one starting in January on the second day of the regularly scheduled classes, and the other starting in June on the first day of summer session classes, each to run exactly 5 weeks. A student would have one chance to write on.

K. Students would not be eligible to serve on both KLJ and KJEANRL.  However, the Faculty Advisor/Editor-in-Chief would have the discretion to approve a transfer from the KLJ and in this event the student grade would be based upon the concurrence of the KJEANRL Faculty Advisor/Editor-in-Chief and KLJ Faculty Advisor.

L. Academic credit for staff members should also follow the former Kentucky Law Journal model in that all staff members shall receive three (3) hours of credit upon the successful completion of their KJEANRL duties. KJEANRL members may apply for credit only during the last semester of study at the University of Kentucky College of Law.  Each staff member, regardless of the number of hours needed for graduation, must apply for his or her KJEANRL credit hours.  This requirement cannot be waived except with the written permission of the KJEANRL Faculty Advisor/Editor-in-Chief.  Grading for the KJEANRL should deviate from the former one of the KLJ in that the Faculty Advisor/Editor-in-Chief will be responsible for any grading of subjective matters.  The student Editorial Board will be responsible for grading strictly on objective criteria such as meeting attendance and time requirements.

57

15. Kentucky Law Journal

M. The duties of the various editorial positions should initially parallel those set out in the KLJ Organizational Manual.  A KJEANRL Manual was developed during the first year of operation and has been updated periodically.

## 17. Joint Appointments

A. The law faculty supports creation of a category of "jointly appointed" law faculty members. One or more members of the faculty of other UK departments would thereby become law faculty members as well.  The advantage to the law school would be the addition of an enriching course to the regular law school curriculum, as well as the increased interaction between local experts from other disciplines and law school students and faculty.  The advantage to the joint appointee would be his or her ability to use the joint law school appointment as a credential.

B. **Functions and duration**.

1. The joint appointee's salary (as well as secretarial support unrelated to the law school class) would be funded entirely by his or her original department.

2. The joint appointee would not vote or take part in law school committees or faculty governance.

3. The joint appointee would teach or team-teach at least one law school class every other year in the law school.

4. The joint appointment would only be for so long as the joint appointee continues to teach one law school class every other year (except that sabbatical leaves and comparable absences would not discontinue the appointment).

5. Joint appointments would be reviewed at regular periods of not less than two years. Joint appointments hereunder are not tenured appointments to the faculty of the College of Law.

C. **Criteria**

1. The law school personnel committee would consider applicants for such a joint appointment, and make recommendations for faculty approval.

2. Inasmuch as a joint appointee would be teaching a course for which law school graded credit will be awarded (which a law student could take in addition to the 6 units of non-law-school pass-fail credit which now can be used toward the law degree), the personnel committee should evaluate joint appointment applicants with scrutiny comparable to that used for regular law school funded appointments.

3. The personnel committee will normally not consider for a joint appointment an applicant whose most recent academic degree is a J.D.

4. A joint appointee would normally hold the rank of full professor in the home department.

5. A joint appointee should have a distinguished published research record in an area of close relevance to the law school curriculum.

58

17. Joint Appointments

6. Joint appointees normally should also have previously established a record of working with law school faculty members in common endeavors. This would enable such law faculty members to evaluate first-hand the suitability of the joint appointee to teach a class for which law school credit is awarded.

**D. Procedures**

1. The joint appointee would normally either teach a course not currently in the curriculum, or team-teach a course with a regular member of the faculty.

2. The personnel committee should refer to the curriculum committee any proposed new course, to be considered by the curriculum committee under its existing standards, prior to the personnel committee making a recommendation to the faculty regarding the joint appointment.

3. The faculty would normally consider the curriculum committee's recommendation regarding a new course at the same time that it considers the personnel committee's recommendation.

4. Apart from the case of team-teaching, the personnel committee would normally not consider having a joint appointee teach a course already in the curriculum, unless it is otherwise not feasible to fill the need for the course taught through the normal appointment process.

## 18. Interdisciplinary Fellows

A. The law faculty supports the creation of a position whereby one or more members of the faculty of other UK departments, or faculty members of other Kentucky Colleges and Universities, or other local experts, would become "interdisciplinary fellows." The advantage to the law school would be the addition of enriching expertise to the curriculum, as well as increased interaction between local experts from other disciplines and law school students and faculty. The advantage to the "interdisciplinary fellow" would be his or her ability to use the appointment as a credential.

**B. Functions and duration**.

1. The "interdisciplinary fellow's" salary (as well as secretarial support unrelated to the law school class) would be funded entirely by his or her original department.

2. The "interdisciplinary fellow" would not vote or take part in law school committees or faculty governance.

3. The "interdisciplinary fellow" would participate in law school teaching by providing a lecture or lectures, or other teaching contribution, in at least one law school class during each two-year period of appointment.

4. Any appointment will only continue for so long as the "interdisciplinary fellow" continues to participate in the manner set forth in paragraph 3. above.

5. An appointment to the position of "interdisciplinary fellow is not a "joint appointment" or a tenure-track appointment to the faculty of the College of Law. Any appointment will be reviewed by the sponsoring faculty member (see Section 18.C.2) at least once during the period of appointment.

**C. Procedures**

17. Joint Appointments

      1. The law school personnel committee would consider applicants for appointment to the position of "interdisciplinary fellow," and make recommendations for faculty approval.

      2. Nominations for the appointment of an "interdisciplinary fellow" may be made to the personnel committee by a sponsoring faculty member, a sponsoring faculty member being a regular faculty member interested in having the appointee participate in the teaching of the regular faculty member's course or seminar.

      3. Any committee recommendation regarding the appointment of an "interdisciplinary fellow" will be subject to faculty approval.  The name of any "interdisciplinary fellow" may be included in appropriate law school literature, including the masthead of the Kentucky Law Journal.

## 19. Honor Code

[Note: The following Honor Code was approved by the University Senate on February 10, 2003.]

Preamble

The faculty and the students of the University of Kentucky College of Law establish this Honor Code in order to foster integrity and honor within the legal profession, to encourage an atmosphere of mutual trust and confidence within the College of Law, and to promote respect for the College of Law among those who work and study there and among the public generally.

Article I   The Honor Code

A law student shall not lie, cheat, steal,  interfere with another student's academic pursuits, falsify or misuse academic records, or fail to report another student's breach of these rules.

Article II   Violations

The conduct specified in the following six paragraphs is a violation of the Honor Code only if (1) the conduct is intentional, and (2) it relates to any work intended to result in or lead to completion of work for academic credit from the College of Law, while using the placement resources and facilities, or on or in connection with an application for admission to the College.

(A) Lying.  Lying is deliberate misrepresentation of a fact, or deliberate omission of facts making an otherwise true statement a misrepresentation.

(B) Cheating. Cheating is giving or receiving unpermitted aid in any course or assignment.  Law students should assume that no aid is permitted, from other persons or materials of any kind, unless specifically authorized by the professor. Cheating specifically includes plagiarism as defined in the University Senate Rules.

(C) Stealing. Stealing is taking without permission any property belonging to another in order to obtain an academic advantage.

(D) Interference with academic pursuits. Interference with academic pursuits is any conduct which makes it difficult or impossible for other law students to perform academic work. It must be done with the intention of hindering other students' academic success.

(E) Falsification or misuse of academic records.  An "academic record" is any paper or electronic version, official or unofficial, of the student's academic record, transcripts, application documents, admission credentials, and academic record transaction documents. "Falsification or misuse" is unauthorized access, use, disclosure, or alteration.

(F) Failure to report a breach of the Honor Code.  Failure to report a breach of the Honor Code is (1) failure to report, pursuant to Article IV(A), actual knowledge that another student has committed a violation of the Honor Code or (2) failure to appear and testify truthfully as a witness in any Informal Hearing conducted under Article IV(C).

(G) Exception for good faith reporting of alleged offenses. The good faith reporting of an Honor Code violation, whether or not the alleged violator is later charged or convicted with any offense under the Honor Code, may not itself be punished as a violation of the Honor Code.

19. Honor Code

Article III - Administration

The students and faculty of the College of Law shall be jointly responsible for implementing the Honor Code. An Honor Council shall be responsible for administering the Honor Code in accordance with its purpose, scope and procedures.

A. Honor Council Composition

1. Student Members. The Student Bar Association of the College of Law each year shall invite all interested students to submit their names as candidates for Honor Council positions. Each year during the month of March the Dean shall choose from the among these candidates 12 students who shall serve as Honor Council members. The Honor Council shall include at least four members of the prospective third year class and four members of the prospective second year class. If for any reason there is an insufficient number of candidates, the Dean shall select sufficient members from among those in the student body willing to serve on the Honor Council. Student members shall serve one year terms from April 1 through March 31, and are eligible for re appointment. If a student Honor Council member is unable to complete his or her one year term, the Dean shall appoint a replacement to serve until the end of the term. If for any reason a student Honor Council member is not available for a session, the Honor Council Chair shall select a temporary alternate from the available student body.

2. Faculty Members   The Dean shall appoint four faculty members to the Honor Council. Faculty members shall serve a two year term on the Honor Council on a staggered basis, and are eligible for re appointment. If a faculty Honor Council member is unable to complete his or her two year term, the Dean shall appoint a replacement to serve until the end of the term.   If for any reason a faculty Honor Council member is not available for a session, the Dean shall select a temporary alternate from the faculty.

B. Honor Council Chair

The Dean shall appoint one of the student members of the Honor Council to serve as Chair. It shall be the duty of the Chair to preside at all meetings of the Council, to receive all complaints and allegations of violations of the Honor Code, to address the first year class concerning the existence and importance of the Honor Code and its procedures, and to perform all duties required by the office.

C. Student Agreement

Upon entering the College of Law, each law student shall be required to sign the following statement:

I, [Student's Name], have read the College of Law Honor Code, understand it, and agree to abide by its provisions.

_____                    _____

Signature                                          Date

Article IV - Procedures

A. Report of Suspected Violations

A law student or faculty member having actual knowledge that a law student has committed a violation of the Honor Code shall report such knowledge by a signed written complaint filed with the Chair of the Honor Council. In addition, any student or other person who believes there has been a violation of the Code may bring the alleged violation to the attention of the Chair by filing a signed written

62

19. Honor Code

complaint. The complaint should include a brief account of the facts describing the incident and shall be submitted no later than 30 days after the complainant becomes aware of the incident.

B. Preliminary Determination

Upon receipt of a complaint, the Chair of the Honor Council shall consult with the Associate Dean for Academic Affairs and then shall determine whether the complaint alleges a violation within Article II of the Honor Code. The Chair shall inform the complainant in writing of this decision and the rationale for it and shall provide the Dean with a copy of the complaint and of the written response to the complainant. If the Chair believes the reported act falls within Article II of the Honor Code, he or she shall inform the accused person (the "Respondent") of the complaint and furnish him or her with a copy of the Honor Code. A determination by the Chair that the complaint fails to state a violation within Article II of the Honor Code does not preclude a contrary conclusion upon a subsequent complaint based on new evidence.

C. Informal Hearing

Within a reasonable time after the Chair's notice to the Dean that the complaint alleges a violation within Article II of the Honor Code, the Dean shall convene an Informal Hearing on the matter before the Dean and a Hearing Committee.

1. Hearing Committee - The Hearing Committee shall consist of two student members and two faculty members of the Honor Council. The student members shall be selected by the Honor Council Chair.

2. Notice to Respondent - The Dean shall inform the Respondent of the time and place of the Informal Hearing.

3. Objectives - The purpose of the Informal Hearing is to inform and advise the Dean in reaching a conclusion on the issue of guilt and on the appropriate penalty for the offense, if any. The Informal Hearing shall be conducted to permit the Dean and the Hearing Committee to hear the facts underlying the complaint, the Respondent's defense to the allegations, and any aggravating or mitigating factors that may affect the penalty.

4. Procedures - The proceeding shall be conducted informally. In addition to the Dean and the Hearing Committee, only the Honor Council Chair, the Respondent and his or her legal representative, if any, and, while they are testifying, any necessary witnesses may be present at the hearing. All matters discussed at the hearing are to be held confidential by those present. The Informal Hearing shall be recorded on tape by the Dean, and only the Dean and the Respondent and his or her legal representative, if any, shall have access to the tape recording without appropriate legal process. The Dean shall be responsible for the security of all taped records and shall make a proper disposition of them when they are no longer needed. The Dean will preside over the proceeding to elicit a complete record of the incident and may adjourn the proceeding to obtain further evidence relevant to the matter if necessary. The Dean and the Hearing Committee may question the complainant, the Respondent, and any other witnesses present. The Respondent shall have the opportunity to present evidence and to question witnesses. The formal rules of evidence shall not apply.

5. Decision. At the conclusion of the Informal Hearing, the Hearing Committee shall deliberate on the issue of guilt and, if guilt is found, the appropriate penalty. In deciding the question of guilt, the preponderance of the evidence standard shall be applied by the Hearing Committee. A decision by a vote of at least three Hearing Committee members on the issue of guilt and/or on the appropriate penalty shall be considered a recommendation to the Dean and shall be

19. Honor Code

overridden by the Dean only if he or she considers the recommendation to be clearly erroneous based on the evidence adduced at the Informal Hearing.  If the Hearing Committee splits evenly on the issue of guilt or the appropriate penalty, the Dean shall decide the question(s) based on his or her own view of the preponderance of the evidence adduced at the Informal Hearing.

6. Penalties - In determining the penalty to be recommended and applied, the Dean and the Hearing Committee shall include in their consideration the seriousness of the violation, the degree of willfulness and premeditation, and the truthfulness of the Respondent throughout the Informal Hearing. If the penalty is suspension, a student may be suspended for a reasonable amount of time, which may include the time required for treatment or rehabilitation.  Possible penalties for each of the categories of Honor Code violations are as follows:

a. Lying - Penalties may include a failing grade in the course and also may include a written reprimand from the Dean, the loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

b. Cheating - Penalties shall include a failing grade in the course, and may also include a written reprimand from the Dean, loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

c. Stealing - Penalties may include a written reprimand from the Dean, a failing grade in the course, loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

d. Interference with Academic Pursuits - Penalties may include a written reprimand from the Dean, a failing grade in the course, loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

e. Falsification or Misuse of An Academic Record - Penalties may include a written reprimand from the Dean, loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

f. Failure to Report a Breach of the Honor Code - Penalties may include a written reprimand from the Dean, a failing grade in the course, loss of privileges to participate in placement office programs, and suspension or expulsion from the College of Law.

D.  Final Action

At the conclusion of the Informal Hearing, the Dean shall reach his or her determination on the issue of guilt and, if guilt is found, on the appropriate penalty.  Within a reasonable time, the Dean shall inform the Respondent, the complainant, the Academic Ombud, and, if the penalty involves a failing grade, the University Registrar of this determination. If the penalty imposed includes suspension or expulsion from the College of Law, the matter shall be forwarded to the Chancellor for further action.

E.  Appeals

A Respondent found guilty of a violation of the Honor Code may appeal the finding of guilt and/or the penalty imposed by filing a written notice of appeal with the Academic Ombud within 10 working days of receiving notice of the Dean's determination in the matter.   Appeals will proceed before the Academic Ombud and University Appeals Board under University Senate Rules 6.4.7 and 6.4.8.  The student will have the right of class participation and attendance during the consideration of any appeal.

64

19. Honor Code

    F. Confidentiality

In all matters arising under this Honor Code, faculty members and students are expected to show due consideration for legitimate concerns regarding confidentiality. Faculty members and students are generally expected to refrain from disclosing the identities of students who have alleged, reported, or been charged with violations of the Honor Code. Disclosure of the identity of such a student should only be made with the student's consent, in response to legal process, in seeking advice from legal counsel, or when necessary to further the policies underlying this Honor Code.

## 20. Distribution of Law Faculty Rules and Policies

The Dean or the Dean's designate shall distribute faculty rules of procedure by electronic distribution using the college's computer network at least annually.  In addition, the Dean or the Dean's designate shall maintain a printed copy of the rules of procedure.

## 21. Approval and Modification of Law Faculty Rules and Policies

These rules have been created and approved by the faculty of this college pursuant to the authority granted by the Administrative and Governing Regulations of the University of Kentucky.  These rules do not become effective until and unless approved by the Dean and Provost as indicated by their signatures below.  Any modifications to these rules must also be approved by the Dean and Provost before the modifications take effect.  A current copy of the approved rules for this college is available in the offices of the Dean of the College and the Provost. A copy of these approved rules will be posted online at the University Senate website.

Appendix

## Appendix: Modified Duties Following Birth, Adoption, or Guardianship: Draft Recommendation

*Dean's comments: The University has a Temporary Disability Leave policy for faculty at the following website: http:www.uky.edu/ofa/sites/www.uky.edu.ofa/files/uploads/Faculty_TDL_Policy.pdf.  Given my authority within University regulations to determine work assignments for all faculty, I will view the draft policy as advisory until such time as the faculty is able to formally vote on this matter.*

A full-time faculty member in the regular, clinical or library title series at the College of Law who becomes a parent may request one semester's relief from teaching.  Parental modified duties may only be granted for the semester in which the faculty member becomes a parent, in the semester immediately following the semester in which the faculty member becomes a parent, or at some other reasonable time that is approved by the Dean.  The faculty member who is granted parental modified duties must have at least co-equal caregiving responsibilities for an infant or adopted minor child.  The modified duties period is designed to permit the faculty member time for adjustment to parenting needs.  During the parental modified duties period, the faculty member's salary will not be reduced as a result of the modified duties.  The faculty member is relieved from teaching responsibilities during the parental modified duties period but is expected to fulfill all other responsibilities, including, but not limited to, service, research, and administrative responsibilities.  The total effort for these other University related responsibilities on the faculty member's DOE should amount to 100% effort on behalf of the University during the parental modified duties.

A faculty member on parental modified duties cannot be employed by another institution during the period of modified duties.  A faculty member is eligible for parental modified duties immediately upon employment in the College of Law.  In considering the timing and approval of the requested parental modified duties, the Dean may consider, at a minimum, the following factors: adjustment of teaching schedules of other faculty not affected by the modified duties, a reasonable adjustment to the tenure/promotion clock or long term contract of the faculty member who is granted modified duties, consideration of the title series of the faculty member who is requesting parental modified duties, and overall impact of the proposed parental modified duties (or timing thereof) on the College of Law.

A faculty member who wishes to take a semester of parental modified duties should, as early as possible prior to becoming a parent, submit a written request to the Dean for parental modified duties with a copy to the Associate Dean of Academic Affairs.  The request should state the reason for the parental modified duties, the semester for which the modified duties are being requested, and the non-teaching University related responsibilities the faculty member expects to perform during the modified duties.

This benefit is in addition to any other applicable leave for which the faculty member may be eligible.

[Adopted by the Faculty Executive Committee Feb. 13, 2015 and modified May 31, 2017.]

66