UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CASE NO. 5:25-cv-00424-DCR

RAMSI A. WOODCOCK                                                    PLAINTIFF

v.                      **MOTION TO ABSTAIN**

UNIVERSITY OF KENTUCKY, *et al.*                            DEFENDANTS

\* \* \* \* \*

The University of Kentucky and its Officials move this Court to abstain and stay this matter until completion of the University's investigation of Professor Ramsi Woodcock and any subsequent disciplinary proceedings.[1] In support of this Motion, these Defendants rely upon the abstention doctrine of *Younger v. Harris* [2] and the Court's other inherent authority.

## INTRODUCTION

In *Doe v. University of Kentucky*, the Sixth Circuit affirmed this Court's *Younger* abstention from the University of Kentucky's administrative proceedings.[3] As in *Doe*, this Court should abstain and stay this matter until the University has completed its investigation of Professor Woodcock and any subsequent disciplinary proceedings.

The University is investigating Professor Ramsi Woodcock.[4] The University has reassigned Professor Woodcock—at full pay—while it is investigating. Although

---

[1] The University's and University Officials' defenses to the Complaint include abstention, sovereign immunity, qualified immunity, and failure to state a claim and have filed a motion to dismiss as well.
[2] *Younger v. Harris*, 401 U.S. 37, 44 (1971).
[3] *Doe v. University of Kentucky*, 860 F.3d 365, 368-71 (6th Cir. 2017).
[4] *See, e.g.,* Plaintiff's motion for preliminary injunction (DE 19); University Defendants Motion to Dismiss (DE 23).

the investigation is in its final stages, the University has not reached a conclusion as to whether Professor Woodcock's conduct warrants discipline. At the end of its investigation, it may decide that no discipline is warranted at all.

If, however, the University intends to impose significant discipline on Professor Woodcock, he will be given notice of the charges against him, an opportunity to be heard, and the right to appeal any determination.[5] At the conclusion of those due process proceedings, President Capilouto will determine whether to initiate tenure revocation proceedings.[6] If tenure revocation proceedings are initiated, then Professor Woodcock will have a hearing before the Board of Trustees.[7] Of course, Professor Woodcock will receive full pay throughout the process. At the conclusion of the hearing before the Board, if Professor Woodcock believes his rights have been violated, he may pursue his claims in this case.

For now, there is no reason for this Court to intervene, and under *Younger* abstention, it should not. If the Court chooses not to dismiss Professor Woodcock's claims,[8] the University asks the Court to abstain until the conclusion of the investigation and any subsequent administrative proceedings. These Defendants additionally incorporate the briefing and supporting documents for the Plaintiff's motion for preliminary injunction.

---

[5] *See University of Kentucky Administrative Regulation—Due Process (Interim)* https://perma.cc/6D2B-EZ74.
[6] *See University of Kentucky Administrative Regulation—Due Process (Interim)* at § F. https://perma.cc/6D2B-EZ74.
[7] KRS § 164.2895.
[8] *See* University's motion to dismiss [DE 23].

2

# ARGUMENT

In *Younger v. Harris*, the Supreme Court held that federal courts should abstain from enjoining state criminal prosecutions absent extraordinary circumstances.[9] The doctrine "derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity."[10] The Sixth Circuit has explained that, in "our litigious era, multiple lawsuits arising from the same occurrence are commonplace. *Younger* abstention is built upon common sense in the administration of a dual state-federal system of justice in such an era."[11] Thus, when "a person is the target of an ongoing state action involving important state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. If the state defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding."[12]

Although *Younger* abstention initially addressed only criminal matters, the Supreme Court has since expanded *Younger* to noncriminal proceedings in which important state interests are involved.[13] Thus, the Supreme Court has said, "*Younger* abstention can apply to cases that are not criminal prosecutions,"[14] and in this Circuit, "[a] district court may abstain under the *Younger* doctrine if three conditions exist: there are state proceedings that are (1) currently pending; (2) involve an

---

[9] 401 U.S. 37 (1971).
[10] *Doe*, 860 F.3d at 368.
[11] *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074–75 (6th Cir. 1998).
[12] *Id.*
[13] *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).
[14] *Doe*, 860 F.3d at 369.

3

important state interest; and (3) will provide the federal plaintiff with an adequate opportunity to raise his or her constitutional claims."[15] In *Middlesex County Ethics Commission v. Garden State Bar Association*, the Supreme Court also cautioned that, "so long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."[16]

In *Doe v. University of Kentucky*, the Sixth Circuit affirmed a substantially similar request where this court abstained from suit against the University.[17] There, the University had initiated disciplinary proceedings against John Doe, a student, who had allegedly engaged in nonconsensual sexual activities with a female student. The University had initiated two earlier disciplinary proceedings which had resulted in findings of responsibility, but both findings had been reversed by the University's internal administrative appeal process. Although the University had scheduled a third hearing, "before it commenced, Doe filed an action in the district court seeking to enjoin Defendants from conducting the hearing based on alleged unconstitutional flaws in the University's policies, and also asserting due process and equal protection claims under the Constitution, 42 U.S.C. § 1983, and Title IX of the Education Amendments Act of 1972."[18] The University asked the Court to abstain while the

---

[15] *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013).
[16] *Middlesex*, 457 U.S. at 435.
[17] *Doe*, 860 F.3d at 368.
[18] *Id*.

4

third hearing proceeded. The District Court agreed to abstain, and the Sixth Circuit affirmed.[19]

In *Ohio Civil Rights Commission v. Dayton Christian School, Inc.*, the Supreme Court of the United States explained its "concern for comity and federalism is equally applicable to certain other pending state proceedings," and thus "applied the *Younger* principle to civil proceedings in which important state interests are involved," and "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim."[20] The Court had "no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest" to warrant abstention, and also cautioned that it had "repeatedly rejected the argument that a constitutional attack on state procedures themselves 'automatically vitiates the adequacy of those procedures.'"[21]

*Doe* and *Dayton Christian* are instructive here. Professor Woodcock may *allege* the University *has or will* deny him the chance to raise constitutional and other concerns. Even if those allegations were somehow ripe, Professor Woodcock's allegations must be made with sufficient factual support.[22] He has not done so. This Court cannot presume bad faith by an instrumentality of a sovereign state relying on

---

[19] *Id.*
[20] *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986).
[21] *Id.* at 628.
[22] *Kyrkanides v. Univ. of Kentucky*, 2019 WL 6135049, at *4 (E.D. Ky. Nov. 19, 2019), *aff'd*, 2020 WL 7062675 (6th Cir. July 29, 2020) ("Unadorned, naked assertions warrant no presumption of truth and are not well-pleaded facts in the plausibility analysis").

5

policies enacted for this very purpose.[23] The Supreme Court has rejected the notion that a constitutional attack on the University's procedures themselves "automatically vitiates the adequacy of those procedures."[24]

*Doe* illustrates the point. There, the University of Kentucky corrected course in response to constitutional concerns raised. That case confirms Professor Woodcock's "constitutional claims . . . can be determined in the state proceedings."[25] In *Doe*, the University responded to the constitutional concerns raised to provide *more* due process.

While the University has not begun *formal* administrative proceedings (and may not), in similar circumstances and other contexts, the Sixth Circuit has said an investigation is sufficient to meet *Younger*'s first factor. For example, where a state judiciary is investigating allegations of judicial misconduct, the Sixth Circuit has concluded that such "investigations are an adjudicative, rather than a legislative, function," and "the first prong of *Younger* abstention is satisfied."[26] So too here. The University's investigation is an "adjudicative, rather than a legislative, function," and "the first prong of *Younger* abstention is satisfied."[27] There is no meaningful distinction between a formal proceeding and an investigation that leads to a formal proceeding. If the University had initiated tenure revocation proceedings,

---

[23] *Cf. Lemon v. Kurtzman*, 411 U.S. 192, 208–09 (1973) ("In short the propriety of the relief afforded appellants by the District Court, applying familiar equitable principles, must be measured against the totality of circumstances and in light of the general principle that, absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful").

[24] *Dayton Christian Sch.,* 477 U.S. at 628.

[25] *Middlesex*, 457 U.S. at 435.

[26] *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006).

[27] *Id.*

6

then clearly *Younger* would apply. Professor Woodcock should not be able to avoid *Younger* simply because the University is investigating in order to decide which measures to take, if any, and whether to initiate tenure revocation proceedings. This principle matters all the more when Professor Woodcock seeks this Court to enjoin and stop the investigation, which it should not do for the reasons explained in the Response to the Plaintiff's Motion for Preliminary Injunction.

Second, there is no question that the University's investigation implicates an important "state interest."[28] That is, the University may validly seek to curb conduct, including speech unprotected by the First Amendment or speech protected by the First Amendment but for which the University may still address because its interests outweighs those of its employee.[29]

As for the third factor, the University's investigation confirms that Professor Woodcock has—*and will continue to have*—the chance to raise any constitutional concerns. So that it may make its determination of whether to begin disciplinary proceedings, the University has invited Professor Woodcock to respond to a series of questions about his conduct—his attendance at the Law and Technology Conference at the Chinese University of Hong Kong, Center for Legal Innovation and Digital Society on May 30, 2025; his attendance at the 27th Annual Antitrust Symposium, George Mason Law Review on February 23, 2024; and his use of University listservs and other online platforms. Thus, Professor Woodcock's claim is refuted by the

---

[28] *Nimer*, 707 F.3d at 701.
[29] *Cf. Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, 540 (6th Cir. 2020); *see also Patterson v. Kent State Univ.*, 155 F.4th 635, 650 (6th Cir. 2025).

Notices in which the University has asked Professor Woodcock to describe the full scope of his appointment and his academic expertise, and invited him to "[p]rovide any facts, *legal arguments*, names of witnesses, or any other information [he] deem[s] relevant to this investigation."[30]

In responding to the questions provided on December 1, 2025, and otherwise providing information or in the subsequent review opportunities, Professor Woodcock and his counsel may raise any constitutional concern they have and are free to make any statement or set forth any legal argument in his favor. Indeed, the investigator is an accomplished attorney. Should the proceeding continue to consider a significant disciplinary sanction, the robust process described here and in other briefing allows additional ample opportunities for Professor Woodcock to raise these constitutional concerns at the initial hearing, on appeal, and before the University Board of Trustees. This situation is no different than *Doe*.[31]

Finally, Supreme Court precedent further underscores why abstention is appropriate. "Public education in our Nation is committed to the control of state and local authorities."[32] Although "the First Amendment does not tolerate laws that cast

---

[30] Written Questions by the University of Kentucky, Office of Equal Opportunity Investigation No. 20251230 (Dec. 1, 2025), at 10, attached as Exhibit 1 (emphasis added).

[31] *Doe*, 860 F.3d at 370-371 ("final factor is whether Doe has an adequate opportunity to raise his constitutional claims in the university proceeding. Doe has raised his constitutional claims twice already, and the UAB has overturned the Panel's decisions. Clearly, there is an avenue available to raise such claims, and the UAB has not rubber-stamped the Panel's decision but has carefully examined it for defects. Doe can appeal after the third hearing, which will involve more protections and procedures, if he believes the hearing still suffers from constitutional error, and he may raise his claims again in federal court once the proceedings have concluded. While the previous system had its flaws, and the University has recognized and attempted to correct this, Doe was still able to raise his constitutional challenges, and he will continue to be able to do so under the new system. As such, we find that the *Middlesex* factors are met and abstention applies").

[32] *Epperson v. State of Ark.*, 393 U.S. 97, 104 (1968) (citation modified).

8

a pall of orthodoxy over the classroom," and the courts "have not failed to apply the First Amendment's mandate in our educational system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief,"[33] the Supreme Court has warned that "[c]ourts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."[34]

For all the reasons stated in the University's motion to dismiss and in response to Professor Woodock's motion for preliminary injunction, this case does not "directly and sharply implicate basic constitutional values."[35] It may never do so. That is because the University may, at the conclusion of its investigation, determine that Professor Woodcock's speech was constitutionally protected. At bottom, the University should be given the time and space to get this right.

For these reasons, the Court should abstain from this matter and allow the University's investigation and any administrative matter run to its finality.

Respectfully submitted,

*/s/ Bryan H. Beauman*
Bryan H. Beauman
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
Telephone No.: (859) 255-8581
Facsimile No.: (859) 231-0851
bbeauman@sturgillturner.com
carmine@sturgillturner.com

---

[33] *Id.* at 104–05.
[34] *Id.* at 104.
[35] *Id.*

9

*Attorneys for Defendants University of Kentucky, Dr. Eli Capilouto, Dr. Robert DiPaola, William E. Thro, and James Duff*

&

William E. Thro
General Counsel
University of Kentucky
Office of Legal Counsel
301 Main Building
Lexington, KY 40506
Telephone No. (859) 257-2936
william.thro@uky.edu

*Attorney for Defendant University of Kentucky*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, I filed this document electronically using the Court's CM/ECF system, which will send notification of such filing to all parties registered to receive electronic filings.

/s/ Bryan H. Beauman
*Attorney for Defendants University of Kentucky, Dr. Eli Capilouto, Dr. Robert DiPaola, William E. Thro, and James Duff*