UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON
CASE NO. 5:25-cv-00424-DCR

**RAMSI A. WOODCOCK**  PLAINTIFF

v.  UNIVERSITY AND UNIVERSITY OFFICIALS' REPLY IN SUPPORT OF MOTION TO ABSTAIN

**UNIVERSITY OF KENTUCKY,** *et al.*  DEFENDANTS

\* \* \*

The University of Kentucky and its Officials—President Eli Capilouto, Provost Robert DiPaola, General Counsel William Thro, and Dean of the College of Law James Duff—file this Reply to Professor Woodcock's Response to the Motion to Abstain. For the reasons below, this Court should abstain until completion of the University's investigation of Professor Ramsi Woodcock and any subsequent disciplinary proceedings.

## INTRODUCTION

The preliminary injunction hearing confirmed all the reasons this Court should abstain. First, Professor Woodcock admitted that he has been reassigned—at full pay—while the University is investigating and that he is and remains a full tenured professor. Second, Sarah Mudd and Dean Duff testified that the University is in the final stages of its investigation, that it has not reached a conclusion as to whether Professor Woodcock's conduct warrants discipline, and the University may decide that no discipline is warranted at all.

1

Testimony at the preliminary injunction hearing also confirmed Professor Woodcock's intransigence has slowed the University's investigation and now he wishes to stop this investigation. Essentially, Professor Woodcock argues his speech is protected and the University cannot investigate. Yet, "the University is not investigating any viewpoints or speech expressed in [his] personal capacity."[1] Because Professor Woodcock is the subject "of an ongoing state action involving important state interests," and "cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case,"[2] "*Younger* abstention requires the federal court to defer to the state proceeding."[3]

## ARGUMENT

### I. Under *Younger*, this Court should abstain.

"Constitutional challenges to the conduct of an ongoing state-court proceeding are barred by the *Younger* abstention doctrine."[4] Although the Motion to Abstain makes clear why *Younger* applies, Professor Woodcock claims: (1) there is no University action that is judicial in nature; (2) the University has no important state interest; and (3) he has no meaningful opportunity to raise constitutional objections. He is wrong—three times over.

---

[1] *See* Exhibit 1 to the University Motion to Dismiss [DE 23], at PageID 1307.
[2] *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074–75 (6th Cir. 1998).
[3] *Id.*
[4] *Deters v. Davis*, 2011 WL 127166, at *6 (E.D. Ky. Jan. 14, 2011) (Reeves, J.) (citation modified).

2

### A. The University's investigation is sufficient to invoke *Younger* abstention.

When the state judiciary is investigating allegations of judicial misconduct, the Sixth Circuit has held such "investigations are an adjudicative, rather than a legislative, function," and "the first prong of *Younger* abstention is satisfied."[5]

Similarly, in *Deters v. Davis*, this Court found "there is little question that the state bar disciplinary process constitutes an ongoing state judicial proceeding."[6] Like *Squire v. Coughlan*, the University's investigation is an "adjudicative, rather than a legislative, function," and "the first prong of *Younger* abstention is satisfied."[7] That is because there is no meaningful distinction between a formal proceeding and an investigation that may lead to a formal proceeding.[8]

*Klopp v. Kentucky Educ. Pro. Standards Bd* illustrates the point.[9] There, the Commonwealth's Educational Professional Standards Board received allegations of misconduct by a teacher. Following its standard process, the Board reviewed the allegations and referred the matter to its attorney for investigation.[10] Formal disciplinary proceedings had not been initiated.[11] When the teacher filed a federal lawsuit, this Court abstained under *Younger*.[12]

---

[5] *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006).
[6] *Deters*, 2011 WL 127166, at *7.
[7] *Squire v. Coughlan*, 469 F.3d at 556.
[8] *Klopp v. Kentucky Educ. Pro. Standards Bd.*, 724 F. Supp. 3d 682, 688–90 (E.D. Ky. 2024), aff'd, 2025 WL 2105146 (6th Cir. July 28, 2025).
[9] *Id*.
[10] *Id. at* 688–89.
[11] *Id*. at 686.
[12] *Id. at* 688–90.

The same rationale applies here. Although the University is only investigating and may conclude formal disciplinary proceedings are unnecessary, abstention is appropriate "even if the case has not yet progressed to state-court at the time of federal review."[13]

Moreover, if this Court rejects *Klopp* and concludes *Younger* does not apply because formal disciplinary proceedings have not been initiated, it will discourage the practice of investigating before initiating formal disciplinary proceedings.[14] The University could have initiated disciplinary proceedings based simply on the allegations concerning Professor Woodcock.[15] Instead, it chose to investigate to learn all the facts before even considering disciplinary proceedings.

B.   **The University has identified important state interests.**

Professor Woodcock claims that the University has no valid state interest, but he ignores the University's interest in addressing speech made as an employee or with university resources, speech that constitutes harassment under Title VI,[16] and private speech where the University's interest outweighs his interest in speaking.[17] Moreover, "our Constitution protects the right of all citizens to speak their minds on matters of public concern freely, and without prior restraint or interference from the

---

[13]   *Id.* at 687.
[14]   For example, after one of its faculty made a social media post celebrating the murder of Charlie Kirk, the University of Tennessee began tenure revocation proceedings without an investigation. *See Shirinian v. Plowman*, No. 3:25-CV-528-KAC-JEM, 2025 WL 3680503 (E.D. Tenn. Dec. 18, 2025).
[15]   Indeed, a federal court refused to enjoin the University of Tennessee's disciplinary proceedings against a faculty member for what the University conceded was private speech on a matter of public concern. *Id.*
[16]   *See DeJohn v. Temple Univ.*, 537 F.3d 301, 317–18 (3rd Cir. 2008).
[17]   *Cf. Bennett v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 977 F.3d 530, 540 (6th Cir. 2020); *see also Patterson v. Kent State Univ.*, 155 F.4th 635, 650 (6th Cir. 2025).

4

government. But it does not protect a right to incite others to violence."[18] As Professor Woodcock admitted in his testimony at the preliminary injunction hearing, he believes that Israel should be eliminated—with violence if necessary, and has, among other things, used university resources to develop and promote his Petition for Military Action Against Israel.[19] Of course, it "is notoriously difficult to determine when speech descends from political speech—even impassioned speech—to incitement,"[20] which is why the University should be permitted to complete its investigation and gather the relevant facts.

### C. Professor Woodcock has a meaningful opportunity to raise constitutional objections.

"The burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of his claims.'"[21] Professor Woodcock fails to carry this burden for two reasons.

First, the University invited him to "[p]rovide any facts, *legal arguments*, names of witnesses, or any other information [he] deem[s] relevant to this investigation."[22] Furthermore, if the University concludes that disciplinary action is necessary, then Professor Woodcock will have the opportunity to raise constitutional objections in those proceedings. In *Doe v. University of Kentucky*, where the Sixth Circuit upheld the application of *Younger* abstention to a University of Kentucky

---

[18] *Wells v. Rice*, 692 F. Supp.3d 735, 742 (E.D. Ky. 2023) (citation modified).
[19] *See* Notice of Investigation, attached as Exhibit 1 to University's Motion to Dismiss; *see also* Amended Notice of Investigation, attached as Exhibit 3 to University's Motion to Dismiss.
[20] *Wells v. Rice*, 692 F. Supp.3d at 742.
[21] *Deters*, 2011 WL 127166, at *8 (citation modified).
[22] Written Questions by the University of Kentucky, Office of Equal Opportunity Investigation No. 20251230 (Dec. 1, 2025), at 10, attached as Exhibit 1 to the University's Motion to Abstain (emphasis added).

5

disciplinary proceeding, the University's appellate tribunal twice had reversed the hearing panel on constitutional grounds.[23] Indeed, in a recent tenure revocation hearing only a few months ago, the faculty member presented constitutional arguments to the Board of Trustees.[24]

Second, while Professor Woodcock complains he "will have no opportunity to review, let alone respond to Ms. Thompson's confidential report, which will address constitutionality," this is not the point. Neither he nor any other individual would have the right to review and respond to attorney-client privileged communications. However, he will have multiple opportunities to raise constitutional objections and make any legal arguments. And, more undermining of his position, the University has expressly asked Professor Woodcock to describe the full scope of his appointment and his academic expertise, and invited him to "[p]rovide any facts, *legal arguments*, names of witnesses, or any other information [he] deem[s] relevant to this investigation."[25] Professor Woodcock has simply refused to answer that or any other question.

\* \* \*

For all these reasons, the Court should abstain under *Younger* and stay this matter until completion of the University's investigation of Professor Woodcock and any subsequent disciplinary proceedings.

---

[23] *Doe v. Univ. of Kentucky*, 860 F.3d 365, 370 (6th Cir. 2017).
[24] *See* Minutes of the Special Meeting of the Board of Trustees of September 11, 2025, available at https://perma.cc/6YFA-QBJF.
[25] Written Questions by the University of Kentucky, Office of Equal Opportunity Investigation No. 20251230 (Dec. 1, 2025), at 10, attached as Exhibit 1 to the University's Motion to Abstain (emphasis added).

## II. None of *Younger*'s exceptions apply.

Professor Woodcock insists the University's investigation is being done in bad faith, but he "bears the burden of showing that bad faith, harassment, or exceptional circumstances are present that would prevent the Court from exercising abstention. The standard for evaluating claims of bad faith and bias is difficult to meet."[26] While Professor Woodcock's response is long on adjectives, his response falls well short of the high standard to invoke the *Younger* exceptions.

As to bad faith, *Deters* is instructive. That Woodcock claims bad faith does not make it so. "While [Woodcock's] continued assertions . . . are made with considerable volumestrength, those assertion do not demand a finding that the prosecutions against him are in bad faith."[27] Professor Woodcock tries to liken his speech in calling for the destruction of Israel to the civil rights activists who were threatened with prosecution "for alleged violations of the Louisiana Subversive Activities and Communist Control Law and the Communist Propaganda Control Law."[28] In *Dombrowski v. Pfister*, the threat to invoke criminal prosecution was made "without any hope of ultimate success, but only to discourage appellants' civil rights activities."[29] That bold claim finds no support in any allegation nor in any of the testimony at the preliminary injunction hearing. The University is gathering evidence to determine whether Professor Woodcock may be subject to discipline—and Professor Woodcock has frustrated and slowed that investigation. The University has

---

[26] *Deters*, at *8 (cleaned up).
[27] *Id.* at *9.
[28] *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965).
[29] *Id.* at 490.

7

not threatened any specific outcome because it has been deprived of the information necessary to make a determination. In other words, there is no basis to credibly assert that this case is anything like *Dombrowski*.

As to bias, Professor Woodcock claims the University's President "is a biased adjudicator because he chose to initiate the investigation and has publicly decried Professor Woodcock's speech," but Woodcock admits the President did not use his name in his one public statement to the University's community.[30] In *Deters*, this Court "explained that the actual subjective motivation of the prosecutor or bar counsel is central to the inquiry. The question, then, the court noted was whether the bar, 'at the time it instituted the disciplinary proceedings . . . was driven by a retaliatory motive or by some other nefarious purpose.'"[31] As the Court explained, "the complaints were initiated by third parties—judges and lawyers." Thus, because the "bar committee merely acted upon third-party complaints it was required to investigate, its doing so could not be called retaliatory or in bad faith."[32]

So too here. The University has received complaints about Professor Woodcock. As in *Deters*, because the University has "merely acted upon third-party complaints it was required to investigate," its investigation cannot "be called retaliatory or in bad faith."[33]

Professor Woodcock's "timeliness" argument also falls short. He believes "access to constitutional review will not be timely because he will have no opportunity

---

[30] Compl. [DE 1], at ¶ 118.
[31] *Deters*, 2011 WL 127166, at *9.
[32] *Id.*
[33] *Id.*

8

to formally respond to allegations or challenge the constitutionality of the proposed action until after the investigation is concluded." As a factual matter, that is not true. The University has detailed a comprehensive and robust method of investigation that involves multiple opportunities for Professor Woodcock to review the evidence and respond to all aspects. In its Motion to Dismiss, the University detailed this process. Professor Woodcock has imply ignored that process. Even so, he has numerous opportunities to influence the Investigator's conclusions.[34] Although the University generally requires those under investigation submit to an in-person interview, the University is allowing Professor Woodcock to respond to written questions.[35] After he submits his response,[36] Professor Woodcock will have an opportunity to review the evidence—including transcripts of witness interviews—and submit a written response.[37] Upon receiving Professor Woodcock's written response to this *first* evidence review, the Investigator will ask any follow up questions of the witnesses.[38] Professor Woodcock will then have a *second* opportunity to review all evidence and submit a written response.[39] After receiving all the evidence and Professor Woodcock's first and second responses, the Investigator will issue a detailed letter of findings.[40] Professor Woodcock's "timeliness" argument is easily refuted.

---

[34] *See* Exhibit 2 to the University's Motion to Dismiss - August 25, 2025, correspondence from Farnaz Farkish Thompson to Joe Childers, counsel for Ramsi Woodcock.
[35] *Id.*
[36] Again, Professor Woodcock refuses to answer the questions until this Court rules on his Motion for Preliminary Injunction.
[37] *See* Exhibit 2 to University's Motion to Dismiss - August 25, 2025, correspondence from Farnaz Farkish Thompson to Joe Childers, counsel for Ramsi Woodcock.
[38] *Id.*
[39] *Id.*
[40] *Id.*

Finally, Professor Woodcock claim all of his speech in all circumstances is constitutionally protected and any investigation is flagrantly unconstitutional. Yet, as both the Motion to Dismiss and the Response to the Motion for a Preliminary Injunction make clear, speech made as an employee and speech that amounts to harassment under Title VI is unprotected. Moreover, if private speech on a matter of public concern it interferes with the University's efficient operations, the University must be allowed to take action to ensure it has the ability to carry outs its missions. Of course, the University does not yet know if any of these apply, which is why the University needs to conduct the investigation.

## **CONCLUSION**

For all these reasons, the Court should abstain from the remainder of the case until the University's investigation and any administrative matter run to its finality.

Respectfully submitted,

*/s/Bryan H. Beauman*
Bryan H. Beauman
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
Telephone No.: (859) 255-8581
bbeauman@sturgillturner.com
carmine@sturgillturner.com
*Attorneys for Defendants University of Kentucky, Dr. Eli Capilouto, Dr. Robert DiPaola, William E. Thro, and James Duff*

&

> William E. Thro
> General Counsel
> University of Kentucky
> 301 Main Building
> Lexington, KY 40506
> Telephone: (859) 257-2936
> William.Thro@UKy.Edu
> *Attorney for Defendant University of Kentucky*

## CERTIFICATE OF SERVICE

     I hereby certify that on December 29, 2025, I filed this document electronically using the Court's CM/ECF system, which will send notification of filing to all parties registered to receive electronic filings.

> */s/Bryan H. Beauman*
> *Attorney for Defendants University of Kentucky, Dr. Eli Capilouto, Dr. Robert DiPaola, William E. Thro, and James Duff*