**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| **RAMSI A. WOODCOCK** | **Plaintiff** |
| **v.** | **No. 5:25-cv-424-BJB** |
| **ELI CAPILOUTO, ET AL.** | **Defendants** |

* * * * *

**OPINION & ORDER DENYING MOTION FOR AN INJUNCTION PENDING APPEAL**

Law professor Ramsi Woodcock has asked this Court and the Court of Appeals to issue an injunction, pending his interlocutory appeal, that would bar the President of the University of Kentucky "from review[ing]" an investigatory "report and the materials on which it rests." Motion for Injunction Pending Appeal (DN 113) at 5; *see* FED. R. APP. P. 8(a)(1); FED. R. CIV. P. 62(d). This 137-page report—by now disseminated in the press but still under seal in this proceeding—addressed several statements Woodcock made in academic panels, law-school listserv blasts, an online petition, and other forums regarding Israel, Palestine, the "Antizionist Legal Studies Movement," and "A Law and Economic Argument for Dismantling Israel," among other related topics. *See generally* Investigative Report (DN 103-1). Broadly speaking, the report raised concerns regarding some of these comments and Woodcock's approach to the investigation, but not regarding his conduct in the classroom.

Absent judicial intervention, the next step is for the President to decide whether Woodcock's activity violated Title VI or the University's technology or conduct rules. If the President answers no, then the investigative process ends and the litigation can continue with respect to Woodcock's many retrospective claims (regarding viewpoint discrimination, due process, discrimination, and the like). If the President answers yes, then Woodcock could (eventually, after appropriate administrative process) face sanctions up to tenure revocation or termination. And before that process could begin, the University must provide ten days' notice to Woodcock and to a state court where Woodcock has filed a parallel lawsuit. *See* Continuance Op. (DN 115) at 3–5, 7 (describing *Woodcock v. University of Kentucky, et al.*, Franklin Cir. Ct. 26-CI-1010). Until then, Woodcock remains on paid leave pending the conclusion of the investigation and his teaching duties (if any) for the spring term remain undecided, as discussed below. The President's findings,

therefore, would not change the terms of Woodcock's employment in any immediate punitive manner.

This motion, however, asks the Court to enjoin the President from "taking any step in furtherance of the investigation" that might lead to such a decision.[1] This entire investigation, according to Woodcock, represents illegitimate and unconstitutional retaliation against private or academic speech disfavored by the administration yet protected by the First Amendment. And for all we now know, he may prove right: if the facts ultimately show that (1) the University wouldn't have investigated but for his protected speech, (2) the investigation would deter a professor of ordinary firmness from continuing to engage in such speech, and (3) the "employee's interest in speaking on a matter of public concern outweighs the employer's interest 'in promoting the efficiency of the public services it performs through its employees.'" *Josephson v. Ganzel*, 115 F.4th 771, 784 (6th Cir. 2024) (quoting *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563, 568 (1968)).[2]

But that merits question is *not* the one currently presented to this Court. Despite Woodcock's efforts to conflate the two, the question pending is whether a federal court should exercise emergency equitable authority to prevent the President from concluding the investigation. And that decision concerns a limited amount of time: the two-week period (now with only eight days remaining) between the original date of the preliminary-injunction hearing (scheduled before the investigatory report issued) and the rescheduled December 3 hearing date (assuming the Court still retains jurisdiction to proceed notwithstanding the notice of appeal, as discussed below). During that hearing, Woodcock would have a chance to prove the investigation's retaliatory origins and chilling effects. But based on the record currently before the Court, and the arguments presented during a TRO hearing and two pre-hearing conferences, the answer to the question whether Woodcock is entitled to an injunction halting the investigation pending appeal under Rule 62 remains the

---

[1] The Motion also asks the Court to enjoin President Capilouto and others from "issuing … any letter of findings or determination," "imposing, recommending, forwarding or applying any sanction," "issuing any statement of charges" or referral for a hearing, or "taking any other step to initiate, advance or conclude any disciplinary, sanction or termination process." Motion Pending Appeal at 20.

[2] The parties disagree somewhat regarding the extent to which public-university interests in communication and administration constrain schoolteacher speech rights. This is an unsettled doctrinal question that appears to turn, at least to some extent, on disputed factual questions that haven't yet been fully joined. *See* Corrected TRO Op. at 5 n.15 (collecting cases).

same as this Court's decision on his request for an injunction pending the litigation's conclusion under Rule 65.

The reasons for that conclusion are set forth in this Court's two most recent opinions. *See* Corrected TRO Op. (DN 86) (denying TRO & setting 11/19/26 PI hearing); Continuance Op. (DN 115) (granting 2-week hearing continuance and denying interim injunction against presidential findings). Woodcock hasn't pointed to any precedent enjoining a school's investigation in remotely similar circumstances. Continuance Op. at 8–9. The Court has accounted for Woodcock's timing concerns in ensuring he'll have a chance to prove his right to teach next semester. *Id.* at 8. Nothing suggests that the "rule-application" portion of an investigation irreparably "brands" speakers—or is somehow foreign to the ample caselaw contemplating that schools may, and sometimes must, conduct investigations consistent with the First Amendment. *Id.* at 9. The record doesn't support findings of objective or subjective chill over the next two weeks that would override the public and University interests in completing an investigation. *Id.* at 9–11. Woodcock's ongoing attempts to simultaneously seek protection in other forums, and the limited protection he has already received as a result, at least call into question his need for immediate relief in this tribunal. *Id.* at 7–8. And no basis exists for silencing the President or University in stating the conclusions they derive from the report. *Id.* at 11.

Three aspects of Woodcock's latest motion pending appeal bear further emphasis, however. And each supports denial of an intervening injunction.

*First*, Woodcock has not articulated any limiting principle. The upshot of his theory is that the subject of *any* speech-related investigation may *always* run to court for an immediate judicial determination whether the underlying speech is protected. If so, according to Woodcock, then the First Amendment bars further investigation—seemingly irrespective of the other familiar equitable considerations that govern temporary judicial relief under Rule 65. *See* Nov. 17 Tr. (DN 110) at 19:2–5. In his view, any investigation is retaliatory and chilling unless it concerns unprotected speech. *See id.*; Motion Pending Appeal at 8 ("[Woodcock] contends that this investigation retaliates against protected speech because protected speech is the only reason for it."). But of course the whole point of an investigation is often to determine what speech is actually at issue and the surrounding facts necessary to decide whether that speech was protected. *See, e.g.*, *Waters v. Churchill*, 511 U.S. 661, 676–78 (1994) (plurality op.). Woodcock hasn't pointed to anything in caselaw or logic that would automatically give speakers a free option to litigate first and face investigation later (if at all).

Emergency equitable relief typically serves as a backstop when no less-intrusive protections are available—not a first stop for expedited federal civil discovery in lieu of investigative fact-finding. *See, e.g.*, Samuel L. Bray, *The Purpose*

*of the Preliminary Injunction*, 78 VAND. L. REV. 809, 817–18 (2025) ("administrative control of an emergency situation"). The Supreme Court has emphasized that the "drastic and extraordinary remedy" of an injunction should not issue "[i]f a less drastic remedy … [i]s sufficient to redress" an injury. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). Nothing in Woodcock's arguments, however, accounts for alternative ways of protecting speech or limiting judicial intrusion on state procedures. And nothing would appear to restrict Woodcock's proposed solution—immediate pre-investigation adjudication of the First Amendment protection due specific and often disputed instances of past speech—to *academic* investigations. This despite the unique "constitutional interests" not present in typical government-employee speech cases that are often at play in a collegiate setting. *See generally Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). And nothing suggests that judges' performance developing and applying complex academic- or government-speech doctrine will *improve* without of the benefit of a developed factual record.

To the contrary, decisions of the Sixth Circuit and other tribunals regularly recognize the importance of the factual record and procedural posture in determining whether speech was protected or retaliation occurred—let alone whether an injunction was warranted. *Compare Meriwether v. Hartop*, 992 F.3d 492, 500 (6th Cir. 2021) (faulting University for "conduct[ing] a less-than-through investigation"), *with Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019) (praising a school for conducting "a thorough independent investigation" preceding a termination decision). *See also Churchill v. University of Colorado at Boulder*, 293 P.3d 16, 36–37 (Colo. App. 2010) (an "employer must be permitted to investigate the potential misconduct of its employee without the fear of the investigation being interpreted as an adverse employment action") (collecting cases).

*Second*, Woodcock has consistently eschewed the Court's efforts to promptly address his colorable objections to the investigation's collateral consequences: that is, his reassignment from teaching and banishment from campus. *See* Corrected TRO Op. at 6; Continuance Op. at 6. Concerningly, his requests for relief pending appeal gloss over two key developments that both protect Woodcock. Despite his representation that the Dean has refused to review his teaching suspension until after the President's findings, *see* Motion Pending Appeal at 3–4; Sixth Cir. Motion (DN 4-1) at 6, defense counsel expressly clarified during this Court's most recent hearing that the timing of a teaching-assignment decision did *not* depend on presidential findings and could be made in time for the spring semester, *see* Nov. 17 Tr. 12:8–12, 13:4–14:1, 22:9–23:3. Nor does he acknowledge that the "building ban,"

Motion at 14; Sixth Cir. Motion at 18, has been lifted.[3]

Instead, this emergency motion, the interlocutory appeal, and the bulk of Woodcock's TRO argumentation have sought to immediately end the entire investigation—full stop. Yet now he purports to split the findings and reassignment by pressing ahead with a December 3 preliminary-injunction hearing in the District Court on the question whether reassignment from teaching pending the investigation is unconstitutionally retaliatory even as he advances in the Sixth Circuit the argument that the investigation is unconstitutionally retaliatory. *See* Response to University Officials' Notice (DN 123) at 2–4. How these tribunals—to say nothing of the Franklin Circuit Court, where still other claims and court orders remain live—may address these overlapping questions in a simultaneous yet orderly fashion is anyone's guess. Nor is it clear how this federal tribunal could fashion injunctive relief that would prevent a university president from even *reviewing* an investigatory report and supporting evidence, a step that Woodcock contends imposes harm that is irreparable in its effect on campus speech. Motion at 18 ("[N]othing prevents the President from continuing to review the report. That review is itself chilling. The official who condemned Woodcock's views is studying a 137-page record of his speech to decide whether to charge him.").[4]

*Third*, the friction Woodcock identifies between a state investigation and federal litigation is not the only fault line that should worry a prudent judge. His latest motion all but ignores the ongoing state-court litigation, its competing ten-day deadline, and the difficulties caused by parallel injunction litigation in multiple forums. The motion describes that ten-day injunction as the result of "counsel for the University Officials agree[ing] in writing to give ten days' notice before the President issues findings." Motion Pending Appeal at 4. Omitting that the state judge *ordered* ten days' notice is both factually and legally misleading. The appealed order and opinion grapple considerably with the litigation multiverse that Woodcock's multiple injunction requests have led the parties into. *See, e.g.*, Rescheduling Op. at 4 (citing James E. Pfander & Nassim Nazemi, *The Anti-Injunction Act and the Problem of Federal-State Jurisdictional Overlap*, 92 Tex. L. Rev. 1 (2013)).

---

[3] Woodcock's position that "relief concerning … the building ban … remain[s] before this Court" is puzzling to say the least. The ban has been lifted and Woodcock has not shown "a fair prospect that the challenged conduct will recur in the foreseeable future," *Resurrection Schools v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022), so no need for temporary injunction relief persists. If anything, the Franklin Circuit Court already granted this relief by ordering the University officials to "reconsider" the ban. *See* DN 69-1 at 3.

[4] Though in places Woodcock's stay motion adverts to purported bias by the President, *see, e.g.*, Motion Pending Appeal at 15, his requests for preliminary relief have not squarely raised any due-process challenge to the President's role.

Woodcock knows this. Indeed, his own publicly available website impishly maps the many courses this adventure has taken: to the federal district court, to the Sixth Circuit, to Franklin Circuit Court, back to federal district court, and now back to the Sixth Circuit. *See* https://ramsiwoodcock.net/category/lawsuits [https://perma.cc/K2SP-D9LZ] (last accessed Nov. 25, 2026). Surely this litigation history and the need to manage competing and potentially conflicting court orders are essential to the careful exercise of a court's equitable authority. *See, e.g., Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (A preliminary injunction should "balance the equities as the litigation moves forward."). Yet for Woodcock, this is just an ordinary First Amendment case, in which "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). This Court is well aware that the preliminary-injunction analysis in a speech case "usually" boils down to the merits—but equally well aware that this is not a usual case. To understand the difficult procedural and timing questions raised by multifaceted litigation like Woodcock's interlinking lawsuits is to appreciate why the First Amendment does not *per se* eliminate the role of a trial judge's equitable discretion in determining whether and when a temporary injunction should issue.

* * *

The University Defendants and Woodcock both note the potential jurisdictional questions raised by Woodcock's notice of appeal, specifically with respect to the upcoming evidentiary hearing. *See* Motion Pending Appeal (DN 113); Notice of Suggestion of Lack of Jurisdiction (DN 118). The notice of appeal purports to challenge portions of this Court's oral rulings during the November 17 hearing as well as the "forthcoming opinion" promised during that hearing. That Continuance Opinion (DN 115), filed hours after Woodcock's notice, merely clarified the earlier oral rulings and took the additional ministerial step of rescheduling the PI hearing for December 3, 2026—two weeks after the date previously set.[5] This imminent

---

[5] Shortly before the Court issued its opinion and order, Woodcock filed a notice of appeal for "the ruling announced at the November 17, 2026 status conference, and from any written opinion explaining that order." Notice of Appeal (DN 112) at 1. Generally, the filing of a notice of appeal "divests the district court of jurisdiction," *United States v. Sims*, 708 F.3d 832, 834 (6th Cir. 2013), and strips the Court of "adjudicatory authority over any aspect of the case ... involved in the appeal," *United States v. Carman*, 933 F.3d 614, 615 (6th Cir. 2019). In limited circumstances, a district court retains jurisdiction to act, regardless of how hastily a litigant files a notice of appeal. That includes when the "issuance of an opinion ... memorializes an oral ruling made days before." *Sims*, 708 F.3d at 834. "Such action would be considered 'in aid of the appeal.'" *United States v. Smith*, No. 23-5519, 2024 WL 1007115, at *6 n.5 (6th Cir. Mar. 8, 2024) (citing *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003)).

hearing could've addressed the factual circumstances of the investigation's origins and pursuit in greater depth. And as noted above, it may yet still; after all, this Court has never ruled that Woodcock couldn't prove that the investigation violated his First Amendment rights—only that he'd have to establish those fact-dependent elements during an evidentiary hearing. Now, as noted by the University Defendants, the extent of this Court's residual jurisdiction is subject to doubt—a matter that all involved should address during the December 1, 2026, remote prehearing conference.

Benjamin Beaton, District Judge
United States District Court

November 25, 2026